UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>JOHN C. SZUMOWSKI,<br><br>Debtor. | Chapter 13<br>Case No. 10-12431<br><br>Hon. Robert E. Littlefield<br>U.S. Bankruptcy Judge |

## AFFIRMATION IN OPPOSITION TO OBJECTION TO CLAIM.

Natalie A. Grigg, Esq., an attorney duly admitted to practice before the United States Bankruptcy Court for the Northern District of New York, states the following under the penalty of perjury:

1. I am an associate with Steven J. Baum, P.C., the attorneys for BAC Home Loan Servicing, LP f/k/a Countrywide Home Loan Servicing, LP (the "Secured Creditor"), a secured creditor of John C. Szumowski (the "Debtor"), and as such, am fully familiar with the facts and circumstances contained herein.

2. This Affirmation is submitted in opposition to the Debtor's Objection to the Proof of Claim filed by the Secured Creditor.

## FACTUAL AND PROCEDURAL BACKGROUND

3. On September 9, 2004, the Debtor John Szumowski and non-debtor Catherine Szumowski executed a Note and Mortgage in the amount of $125,000.00 secured by property located at 2484 Ridge Road, Scotia, New York. The Note was executed by the Debtor and non-debtor to Home Funding Finders, Inc., and the Mortgage was executed by the Debtor and non-debtor to MERS as nominee for Home Funding Finders, Inc. Home Funding Finders, Inc brokered the mortgage on

1

behalf of Countrywide and upon closing Countrywide became the holder of the Note. A copy of the Note and Mortgage are attached hereto as **Exhibit A**.

4. The Assignment of Mortgage was executed from MERS as nominee for Home Funding Finders, Inc. to Countrywide Home Loans, Inc. on June 30, 2008 and recorded in the Office of the County Clerk for the County of Schenectady on July 15, 2008. A copy of the Assignment is attached hereto as **Exhibit B**. The Assignment of Mortgage was executed by Elpiniki Bechakas as Assistant Secretary and Vice President of MERS pursuant to an Agreement for Signing Authority and Corporate Resolution that are attached hereto as **Exhibit C**.

5. In 2008, Countrywide Home Loans, Inc. entered into an agreement with Countrywide Home Loans Servicing, L.P. to transfer all servicing rights to Countrywide Home Loans Servicing, L.P. Countrywide Home Loans Servicing, L.P. subsequently changed its name to BAC Home Loans Servicing, L.P.

6. BAC Home Loans Servicing, LP is the current holder and has possession of the original Note. *See* Affidavit of Carolin Hoff attached hereto as **Exhibit D**.

## ARGUMENT

### POINT I

### BAC HAS STANDING TO FILE THE PROOF OF CLAIM.

7. In order to file a Proof of Claim, a claimant must be a creditor or a creditor's authorized agent. *See* Memorandum of Law, p. 1. A creditor is an entity that has a claim against the Debtor at the time of or before the order for relief. *Id*. The Bankruptcy Code defines a claim as a right to payment or a right to an equitable breach of performance. *See* Memorandum of Law, p. 2.

8. In the present case, the original Note was executed to Home Funding Finders, Inc. Home Funding Finders was a broker for Countrywide Home Loans, Inc. Upon the closing of the loan, the

2

Countrywide Home Loans Inc. became the holder of the Note. Countrywide Home Loans, Inc. is a direct subsidiary of Countrywide Financial Corporation that is 100% owned by Bank of America Corporation. In 2008, Countrywide Home Loans, Inc. entered into an agreement with Countrywide Home Loans Servicing, L.P. to transfer all servicing rights to Countrywide Home Loans Servicing, L.P. Countrywide Home Loans Servicing, L.P. subsequently changed its name to BAC Home Loans Servicing, L.P.

9. BAC is the current holder and in possession of the original Note. As the holder of the Note, BAC is entitled to be paid thereon and thus would be a creditor of the Debtor.

10. Additionally, it is well settled that a mortgage can be transferred by delivery alone, without a written assignment. *See* Memorandum of Law, p. 2. No assignment is necessary where the owner of the note and mortgage obligation transfer its interests by delivering the actual note and mortgage to the assignee. *Id.* A written assignment is not a prerequisite to the validity of an assignment of a mortgage. *Id.*

11. Likewise, pursuant to § 3-301 of the Uniform Commercial Code, the holder of an instrument, whether or not he is the owner, may enforce payment in his name. *See* Memorandum of Law, p. 3. A holder is a person in possession of an instrument indorsed to his order. *Id.* However, where an instrument is indorsed in blank, it is payable to the bearer until such time as it is specifically indorsed. *Id.*

12. In the present case, the Note is endorsed in blank from Home Funding Finders, Inc. As per the Affidavit of Carolin Hoff, BAC is the holder of the Note and has possession thereof. Therefore, BAC may foreclose or otherwise enforce payment in its name.

13. Recent case law within the Southern District of New York has determined that an assignee can support its standing to file a Proof of Claim by filing an affidavit of an individual attesting to the assignment of the Note. *See* Memorandum of Law, pp. 3-4.

14. BAC has met this burden by providing the affidavit of Carolin Hoff that states that BAC is in possession of the Note.

15. The Debtor listed Countrywide Home Loans, Inc. as a creditor in his Schedules, and notably did not list the debt as disputed until after the filing of the instant Objection. Though the Debtor may amend his Schedules at any time, the timing of the instant amendment is suspect and should be questioned by this Court.

16. BAC has amply shown that it is in possession of the original Note executed by the Debtor. As such, BAC has standing to file a claim in the matter, and the Debtor's Objection should be denied.

## POINT II

### THE DEBTOR HAS NO STANDING TO CHALLENGE THE VALIDITY OF THE ASSIGNMENT.

17. The Debtor's argument that the Assignment of Mortgage is deficient fails because the Debtor has no standing to challenge the Assignment of Mortgage.

18. The basic foundation to establish standing is derived from Article III of the Constitution that limits judicial intervention to cases and controversies. *See* Memorandum of Law, p. 5. To establish standing to challenge the assignment, the Debtor must be able to show (1) that he suffered some actual or threatened injury due to the illegal conduct of the defendant; (2) that the injury is fairly traceable to the challenged action; and (3) that there is a substantial likelihood that the relief requested with redress or prevent the injury. *Id.*

19. Applying these factors to the present case leads to the conclusion that the Debtor does not have standing to challenge the Assignment of Mortgage. It is clear that the Debtor owes a debt. The Debtor does not deny executing a mortgage for this property anywhere in his papers.

20. The Debtor has not and will not sustain an injury because the issue is not whether the debt exists, but only to whom it is owed. *Id.*

21. Therefore, regardless of the outcome of the Objection, the fact remains that the Debtor remains in default on his mortgage and is subject to foreclosure. *See* Memorandum of Law, p. 6. There is no injury as a result of the assignment between the assignor and the assignee. *Id.*

22. In fact, the reason that the Debtor has no standing to challenge the assignment is because the while the underlying contract is between the Debtor and the Assignor, the Assignor's contract is between the Assignor and Assignee. *Id.* The two contracts are entirely separate of each other and the Debtor cannot show that he has been prejudiced by the assignment. *Id.*

23. It has long been recognized that a party to an underlying contract may not challenge another party's subsequent assignment and lacks standing to challenge its validity or enforcement. *See* Memorandum of Law, pp. 7-8. The Debtor has no standing to intervene in or challenge the operation of any agreement involving the transfer or negotiation of the Note and Mortgage. *See* Memorandum of Law, p. 8.

24. In the present case, the Assignment of Mortgage is between MERS and Countrywide Home Loans, Inc. The Debtor is not a party to the Assignment and thus has no right to challenge the assignment. Therefore, the Debtor's allegations that the Assignment is fraudulent and invalid are without merit.

## POINT III

### THE ASSIGNMENT OF MORTGAGE IS VALID.

25. Assuming Arguendo this Court finds that the Debtor has a right to challenge the Assignment of Mortgage, the Debtor's challenge still fails because the Assignment out of the MERS system is valid.

26. Importantly, MERS is not a party to this action, is not represented by Ms. Bechakas, Baum, or any other attorney in this matter. Likewise, as demonstrated below, there are no ethical violations. The Debtor's blatant mischaracterization of other cases is nothing more than an attempt to incite the Court and should be disregarded.

### A. MERS IS NOT A PARTY TO HIS ACTION.

27. It is important to distinguish the parties to this action from MERS. The parties are the Debtor, John Szumowski, and BAC, the holder of the Note. MERS is not a party and has no legal interest in the litigation. MERS is not and will not be appearing in the action. *See* Memorandum of Law, p. 9.

28. The courts within New York have commented on the unique role of MERS. *See* Memorandum of Law, p. 10. MERS was created in 1993 to track ownership interests in residential mortgages. *Id.* Mortgage lenders and other entities, known as MERS members, subscribe to the MERS system for the electronic processing and tracking of ownership and transfers of mortgages. MERS acts as the common agent on the mortgages registered in the MERS system. *Id.* The beneficial ownership interest may then be transferred among MERS members. *Id.* When a mortgage is transferred out of the MERS system, an assignment is executed and recorded. Notably, MERS has no legal or beneficial interest in the Promissory Note and it does not become the holder of the Note. *See* Memorandum of Law, pp. 10-11.

29. The Assignment of Mortgage in the present case was to transfer the mortgage out of the MERS system. MERS retained no interest in the mortgage or this matter. Thus, it is not a party to the instant matter.

### B. STEVEN J. BAUM, P.C. DOES NOT REPRESENT MERS

30. The Assignment of Mortgage was executed within the context of the MERS framework and did not establish an attorney-client relationship between Steven J. Baum. P.C. ("Baum") and MERS.

31. Though Ms. Bechakas is an attorney employed by Baum, she also holds the position of Assistant Secretary and Vice President of MERS pursuant to signing authority granted by MERS.

32. An Agreement for Signing Authority was entered into between MERS, Baum, and Countrywide Home Loans, Inc. that granted certain Baum attorneys limited signing authority on behalf of MERS A Corporate Resolution from MERS appointed Ms. Bechakas and other attorneys as Assistant Secretary and Vice President of MERS.

33. The Agreement grants Ms. Bechakas signing authority for the limited purpose of performing ministerial acts such as executing mortgage documents, including assignments of mortgages, necessary to foreclose on a mortgage loan that is registered in the MERS system.

34. Granting this time of authority allows MERS to eliminate the time consuming steps of shuttling paperwork back and forth to MERS for signature and execution. Thus, to streamline the process, several attorneys, including Ms. Bechakas, received appointments as Assistant Secretary and Vice President of MERS.

35. Notably, this Agreement does not create an attorney-client relationship between MERS and Baum. An attorney-client relationship only arises when one contacts and attorney in his capacity as

such for the purpose of obtaining legal advice or services. *See* Memorandum of Law, p. 12. In the present case, the only purpose of the signing authority was so that Ms. Bechakas could represent Baum's clients more easily, not to provide legal advice to MERS.

36. Further, in determining whether an attorney-client relationship exists, the Court should consider such facts as whether a fee was paid or fee arrangement entered into; whether there is a written contract or retainer agreement; whether there is an informal contract whereby the attorney performed gratuitous services; whether the attorney represented the individual in some aspect of a matter; whether the attorney excluded the individual from some aspect of a matter in order to protect another client's interests; and whether the purported client believed the attorney was representing him. *See* Memorandum of Law, p. 13.

37. Looking to the words and actions of MERS demonstrates that no attorney-client relationship exists. The words and actions of MERS and Baum demonstrate that the mutual intention was for MERS to delegate signing authority in order to expedite the assignment process. *Id.* Though formality is not essential, it is present in the form of the Agreement for Signing Authority, which memorializes the scope of Ms. Bechakas's authority and demonstrates the absence of an attorney-client relationship. *Id.* Thus, there is no reason to look beyond the terms of the Agreement for Signing Authority and Corporate Resolution to impose an attorney-client relationship that was neither intended nor expressed. *See* Memorandum of Law, pp.13-14.

38. There is no dispute that Baum was not enlisted to perform a specific task for MERS and thus there is no evidence that an attorney-client relationship exists. *See* Memorandum of Law, p. 14.

### C. THERE IS NO CONFLICT OF INTEREST.

39. As a result of the fact that Baum does not represent MERS, Baum does not have a conflict of interest in violation of any ethical rules.

40. Rule of Professional Conduct 1.7 prohibits an attorney from undertaking representation if it will involve the attorney representing differing interests. *See* Memorandum of Law, p. 15. In the present case, there is no simultaneous representation because as has already been shown, Baum does not represent MERS.

41. Moreover, the interest of MERS is not adverse to the interests of BAC. MERS has no legal or beneficial interest in the promissory note. *See* Memorandum of Law, p. 16. Likewise, it does not have an interest in the Mortgage in its role as nominee for the mortgagee. *Id.* This is evidenced by the language in the MERS mortgage, which clearly discloses that MERS serves as the mortgagee and nominee for the lender, its successors and assigns. As nominee, MERS represents the interest of the MERS member-lender only.

42. The fact that an attorney vested with signing authority executed an assignment to Countrywide Home Loans, Inc. also does not suffice to create an interest on behalf of MERS. This would be contrary to the entire framework and purpose of MERS. *Id.*

43. Further, Rule 1.7 permits simultaneous representation if the attorney can competently represent the interests of each client and if each client consents to the representation. *See* Memorandum of Law, pp. 16-17. In executing the Agreement for Signing Authority, both MERS and Countrywide were aware that attorneys employed by Baum would be executing documents on behalf of MERS.

44. Based on the foregoing, it is clear that there is no conflict of interest and the Debtor's allegations should be dismissed.

### D. THE DEBTOR MISCHARACTERIZES PRIOR CASES INVOLVING THE BAUM FIRM.

45. The Debtor's allegations that Baum has been put on notice of that its practices violate 22 NYCRR §1200.00 is entirely without merit. The Debtor blatantly mischaracterizes caselaw and thus this argument should be wholly disregarded by the Court.

46. As set forth more fully in the accompanying Memorandum of Law, the Debtor's summary of the *Emmanuel* case is inaccurate. At no time did the court in that case find that the assignment of mortgage was invalid because it was executed by Ms. Bechakas. Likewise, the court also noted that had the matter proceeded, the Baum Firm was entitled to submit evidence as to why there was no conflict of interest. As the matter did not proceed, no such information was provided to the court and no further determination was rendered by the court. Notably, the Debtor cites to only this one case, whereas multiple sitting judges in other courts through New York State regularly accept the MERS assignments without challenge. *See* Memorandum of Law, p. 18.

47. Additionally, in regard to the *Michaud* case cited by the Debtor, your affiant was personally present for oral argument in the Michaud case. At no time did Hon. Allan L. Gropper warn the Baum Firm about its practices. The Debtor's summary is more than just a blatant misstatement, it is an outright false characterization of what occurred. The court in that case did not deny the pending Motion for Relief at the urging of the U.S. Trustee, but rather at the suggestion of counsel for the Secured Creditor. Further, the Court did not issue any findings about an alleged conflict of interest.

48. Therefore, the Debtor's reliance on these cases is without merit. *See* Memorandum of Law, pp. 18-19.

### E. THE ASSIGNMENT IS VALID BECAUSE NEW YORK AGENCY AND CONTRACT LAW SUPPORT MERS' ROLE AS THE DISCLOSED AGENT FOR ITS MEMBER LENDERS.

49. New York case law has recognized that MERS has the right to record assignment of mortgages and discharges of mortgages, as well as the right to foreclose on and sell property to one of its mortgages. *See* Memorandum of Law, p. 19.

50. MERS' status as nominee is a common occurrence in public land records as the term is regularly used to enable an individual to act on behalf of another. *Id.* The term nominee ordinarily indicates one designated to act for another as his representative. *Id.* It is a familiar practice in real estate transactions to use a nominee for a variety of purposes including executing or holding mortgages, and this practice has been upheld in New York. *See* Memorandum of Law, p. 20.

51. Likewise, the uniform language in a MERS mortgage demonstrates the borrower's acknowledgment and acceptance of MERS as the agent for the lender. *See* Memorandum of Law, p. 21. This language expressly permits MERS to execute assignments, discharges, releases, and other documents with respect to the mortgage and security instrument on record. *Id.*

52. It is well settled in New York that where a mortgage is signed by the mortgagor, delivered to and accepted by the mortgagee, or its agent, the mortgage constitutes a valid contract and security or lien. *See,* Memorandum of Law, pp. 21-22. The recording of the mortgage is presumptive evidence of delivery by the mortgagor and acceptance by the mortgagee. *See* Memorandum of Law, p. 22.

53. The agreement to treat MERS as the lender's agent is contractual between the borrower and lender. *Id.* The terms of the MERS mortgage are clear, and thus the Court's role is limited to interpretation and enforcement of the Contract. *Id.* The Court has no authority to make a new contract for the parties. *Id.*

54. In light of the language in the mortgage, MERS was designated as the nominee or agent of the lender. Thus, when MERS executes documents as nominee for the lender, it is vested with the explicit powers to act with respect to the mortgage and secured real estate.

55. The Debtor executed the Mortgage and expressly agreed that MERS has the right to foreclosure and exercise any and all rights as nominee for the lender. It is well established that the courts should not interfere with contractual rights set forth in a mortgage agreement. *See* Memorandum of Law, p. 23.

56. Further, an agreement entered into by an agent of a principal is valid and enforceable. *Id.* MERS relationship with its member lenders is that of agent with the lender-principal. *Id.*

57. As recognized by the New York Court of Appeals, members contractually agree to appoint MERS as their common agent. *See* Memorandum of Law, p. 24. The initial mortgage is recorded in the County Clerk's office, and MERS is named nominee of record. When a mortgage is going to be assigned out of the MERS system, then an assignment is executed and recorded. There is no disconnect between the note and mortgage because when MERS acts at the time of the assignment, it acts as nominee for the original lender or successor owner or holder of the Note and Mortgage. *Id.*

58. Likewise, Federal Courts across the United States have also recognized that MERS has the authority to execute assignments as nominee for the lender. *See* Memorandum of Law, pp. 25-26.

59. Based on the foregoing, the Assignment of Mortgage was valid.

## POINT IV

### THERE IS NO EVIDENCE THAT THE SECURED CREDITOR COMMITTED A FRAUD ON THE COURT OR OTHERWISE ACTED IN BAD FAITH.

60. It is improper for a court to issue attorneys' fees where there has been no indicia of bad faith. *See* Memorandum of Law, p. 27.

61. Bad faith is shown where a party misrepresents facts or is motivated by an improper purpose. *Id.*.

62. In the present case, there is no showing of bad faith. The Assignment of Mortgage was executed pursuant to a Agreement for Signing Authority and Corporate Resolution issued by MERS. Additionally, BAC is the current holder of the Note and has possession thereof. As the holder of the Note, BAC is entitled to be paid on the debt and thus would have a right to file the Proof of Claim.

63. Therefore, there has been no showing of bad faith and the Debtor's counsel is not entitled to be reimbursed for her attorneys' fees.

WHEREFORE, the Secured Creditor respectfully requests an Order of this Court denying the Debtor's Objection to Claim in its entirety, together with such other and further relief as the Court deems just and equitable.

Dated: January 5, 2011
    Buffalo, New York

*Natalie A. Grigg*
Natalie A. Grigg, Esq.

13