UNITED STATE BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:                                          Chapter 13
                                                Case No. 10-12431
        JOHN C. SZUMOWSKI,
                                                Hon. Robert E. Littlefield
                Debtor.                         U.S. Bankruptcy Judge

## MEMORANDUM OF LAW

### PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of BAC Home Loan Servicing, LP and Steven J. Baum, P.C. in regard to the allegations set forth in the Debtor's Objection to Claim. The procedural and factual background is set forth in the Affirmation of Natalie A. Grigg, Esq. and will not be reiterated herein. As set forth more fully below, the Debtor's Objection to Claim should be denied in its entirety because (1) BAC has standing to file the claim as the holder of the Note; (2) the Assignment of Mortgage is valid; and (3) no conflict of interest existed when executing the Assignment.

### ARGUMENT

### POINT I

### AN ASSIGNMENT TO BAC IS NOT NECESSARY

In order to file a proof of claim, a claimant must be a "creditor or a creditor's authorized agent." Fed. R. Bankr. Pro. 3001(b). A creditor is defined as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11

1

U.S.C. §101(10)(A).  Additionally, a claim is a "right to payment" or a "right to an equitable

remedy for breach of performance if such breach gives rise to a right to payment...." 11 U.S.C.

§101(5)(A) and (B).

In the present case, Home Funding Finders, Inc. brokered the loan on behalf of

Countrywide Home Loans, Inc.. The Debtor executed a Note to Home Funding Finders, Inc. and

a Mortgage to MERS as nominee for Home Funding Finders, Inc.  Upon closing, Countrywide

Home Loans, Inc. became the holder of the Note.

In 2008, Countrywide Home Loans, Inc. entered into an agreement with Countrywide

Home Loans Servicing, L.P. to transfer all servicing rights to Countrywide Home Loans

Servicing, L.P.  Countrywide Home Loans Servicing, L.P. subsequently changed its name to

BAC Home Loans Servicing, L.P.  Therefore, no Assignment of Mortgage beyond that already

completed was necessary.  BAC is the current holder of the Note.

Additionally, it is well settled that while an assignment of mortgage is evidence of

ownership of that mortgage, case law establishes that a mortgage can be transferred by delivery,

without a written assignment. *See In re Conde-Dedonato*, 391 B.R. 247, 2008 Bankr. LEXIS

2013 (Bankr. E.D.N.Y. July 22, 2008) ("An effective mortgage assignment is accomplished by

delivery only. There is no need for a written assignment from the owner of the note and

mortgage when it transfers its interests by delivering the actual note and mortgage to the

assignee."); *see also* Bergman on New York Mortgage Foreclosures, § 16.05(1b)(a); *Flyer v.*

*Sullivan*, 284 A.D. 697, 134 N.Y.S.2d 521 (1st Dep't 1954), *citing Levy v. Louvre Realty Co.*,

222 N.Y. 14, 20, 118 N.E. 207 (1917). As Bruce J. Bergman concludes,

> "A written assignment is not a prerequisite to the validity of an
> assignment of a mortgage because a mortgage can be assigned by
> mere delivery.  Similarly expressed, there is no legal need for an
> assignment in writing.  Rather an effectual mortgage assignment is

accomplished by delivery only.    Succinctly summed up, ***title to a
note and mortgage passes by delivery of those instruments and no
formal written transfer is necessary.***"

The Uniform Commercial Code also provides that, "[t]he holder of an instrument whether or

not he is the owner may...enforce payment in his own name." U.C.C. §3-301.  A "holder" is

defined as "a person in possession of a document of title or an instrument...issued or indorsed to

him or to his order...." U.C.C. §1-201(20).  Pursuant to U.C.C. § 3-204, "an indorsement in blank

specifies no particular indorsee...and becomes payable to the bearer and may be negotiated by

delivery alone until specially indorsed."  Therefore if possession of an instrument is delivered by

voluntary transfer to an entity or person with the intention of also transferring the rights to enforce

that instrument, the transferee is entitled to enforce the instrument as its holder.

In the present case, the Note is endorsed "in blank" by Home Funding Finders, Inc.

Therefore, in accordance with New York law, BAC as the holder of the Note has a pecuniary

interest in the Note and may enforce its terms.

The law is clear that a written assignment is not required in order to transfer ownership,

nor is recording of any such assignment required in the local Clerk's or Registrar's office.  Key

to the effectuation of an unwritten assignment is the transferor's intention to vest his rights in the

transferee in a perfected transaction.  *Leon v. Martinez*, 84 N.Y.2d 83, 88; 614 N.Y.S.2d 972

(1994).  As the Note in this case in indorsed in blank and BAC has possession of the Note, it is

clear that BAC has the right to enforce the Note.  Therefore, BAC has standing to file the instant

Proof of Claim.

Likewise, recently, Hon. Martin Glenn noted in *In re Minbatiwalla*, 424 B.R. 104 (Bankr.

S.D.N.Y. 2010) (J. Glenn) that a secured creditor who is an assignee may submit an affidavit

attesting to the assignment of the Note and Mortgage.  Further, as noted by Hon. Cecelia Morris

in *In re Feinberg*, "as a matter of law, [BAC's] possession of the original note and mortgage is evidence of a valid assignment, and the [Debtor] has no triable issue of fact with respect to the assignment." As can be seen from the Affidavit of Carolin Hoff, Countrywide Home Loans, Inc. became the holder of the Note upon the closing of the loan. Subsequently, BAC became the holder and remains the holder up through the present time.

BAC has come forth with evidence that it is the holder of the Note and has possession of the Note. As such, BAC is entitled to payment on the Note, and therefore, can file the instant claim. A review of the documents filed by the Debtor demonstrates that the Debtor knew of the debt and listed Countrywide Home Loans, Inc. as the creditor. The fact that the Debtor listed Countrywide Home Loans, Inc. within Schedule D demonstrates that the Debtor was aware that the debt transferred from Home Funding Finders, Inc. to Countrywide Home Loans, Inc. Initially, the debt was not listed as disputed. Though the Debtor has since amended his schedules, and has the right to do so at any time, this Court should take notice of the fact that the amended schedules that list the debt as disputed were not filed until after the instant objection to claim. This raises the question of whether this amendment was done in bad faith. Also, the Court should also note that the amount of the debt set forth in the Debtor's schedules is substantially similar to the amount set forth in BAC's Proof of Claim. The Debtor has acknowledged that there is a valid claim secured by the real property and the creditor would therefore have standing to file the proof of claim.

Therefore, it is evident that BAC is a "creditor" of the Debtor. The Debtor has an obligation and duty to pay based on the Note and Mortgage he executed, thus, BAC, has a right to payment from the Debtor and a pecuniary interest in the mortgage.

4

## POINT II

### THE DEBTOR HAS NO STANDING TO CHALLENGE THE
### VALIDITY OF THE ASSIGNMENT.

The main thrust of the Debtor's objection is that BAC does not have standing to file the

Proof of Claim because BAC is not a real party in interest and also because the assignment may

be deficient. The Debtor's argument must fail because case law is well established that a Debtor

does not have standing to challenge an assignment.

"Standing requirements emanate from *Article III of the Constitution*, which limits judicial

power of courts to actual cases and controversies." *Bridge v. AAMES Capital Corp.*, 2010 U.S.

Dist. LEXIS 103154 at *5 (N.D. Ohio Sept. 28, 2010). "To satisfy Article III's standing

requirement, a plaintiff must have [1] suffered some actual or threatened injury due to the alleged

illegal conduct of the defendant; [2] the injury must be 'fairly traceable' to the challenged action;

and [3] there must be a substantial likelihood that the relief requested will redress or prevent

plaintiff's injury." *Id.* (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of

Church & State, Inc.* 454 U.S. 464, 472 (1982)).

Application of these factors to the present case leads to the conclusion that the Debtor has

no standing to challenge the assignment. Here it is abundantly clear that the debtor owes a debt.

The Debtor does not dispute that he signed the Note and Mortgage. The Debtor affirmatively

acknowledged the debt in his Petition, and only recently amended his scheduled to list the debt

as disputed.

Challenging the validity of an assignment fails to state a claim of injury since the

challenge is not whether such a debt exists, but rather to whom it is owed. *See Livonia Property

Holdings, LLC v. Farmington Road Holdings, LLC*, 2010 U.S. Dist. LEXIS 47595 (E.D. Mich.

May 13, 2010). The claim that the assignment is invalid does not state a claim to injury as

inevitably the true holder has a right to remedy under state law for the debtor's defaulting on her mortgage. "Although a debtor may assert certain defenses that render an assignment invalid...he generally may not assert any ground which may render the assignment voidable 'because the only interest or right which an obligor of a claim has in the instrument of assignment is to insure him or herself that he or she will not have to pay the same claim twice." *Livonia Property Holdings*, 2010 U.S. Dist. LEXIS at *23. "A debtor, for example, cannot raise alleged acts of fraud...." *Id.*

As the court in *Bridge* succinctly stated, "regardless of the outcome of this litigation, Plaintiff is still in default on her mortgage and subject to foreclosure. As a consequence, Plaintiff has not suffered any injury as a result of the assignment between [assignor] and [assignee] ..." 2010 U.S. Dist. LEXIS 103154 at *13 (N.D. Ohio Sept. 28, 2010).

In *Ifert v. Miller*, 138 B.R. 159 (Bankr. E.D. Pa. 1992) the court held that a debtor could not challenge the validity of an assignment under Texas law. The court stated that:

> [The underlying contract] is between [Debtor] and [Assignor]. [Assignor's assignment contract is between [Assignor] and [Assignee]. The two contracts are completely separate from one another. As a result of the assignment of the contract, [Debtor's] rights and duties under the [underlying] contract remain the same: The only change is to *whom* those duties are owed....[Debtor] was not a party to [the assignment], nor has a cognizable interest in it. Therefore, [Debtor] has no right to step into [Assignor's] shoes to raise [its] contract rights against [Assignee]. [Debtor] has no more right than a complete stranger to raise [Assignor's] rights under the assignment contract.

*Id.* at 166 n.13.

A debtor generally cannot challenge an assignment since the debtor's underlying obligations to the true holder remain unaffected, and thus the debtor lacks any interest in the assignment that would merit a cause of action against the assignee. As the court in *Infert*

explained, it is not a matter of whether the debtor's obligation remains but rather a matter of "to *whom* those duties are owed." *Id.*

It has long been recognized that a party to an underlying contract, here the debtor, may not challenge another party's subsequent assignment and lacks standing to challenge its validity or enforcement. *See Livonia Property* 2010 U.S. Dist. LEXIS 47595 at *28-29 ("Borrower may not challenge the validity of assignments to which it was not a party or third-party beneficiary, where it has not been prejudiced, and the parties to the assignments do not dispute (and in fact affirm) their validity."); *Pagosa Oil and Gas, L.L.C. v. Marrs and Smith P'ship*, 2010 Tex. App. LEXIS 938, 2010 WL 450910 (Tex. App. Feb. 10, 2010) (finding lessor lacked standing to challenge assignment of lessee's breach of lease action because lessor was not party or third-party beneficiary to assignment contract); *Rogan v. Bank One*, 457 F.3d 561, 567 (6th Cir. 2006) ("because neither the debtors nor the Trustee [were] parties to the [assignment]... [t]hey lack standing to enforce it; they cannot claim to have relied on it."); *Pierce v. Wells Fargo Bank*, 2006 U.S. Dist. LEXIS 96896 at *3 (N.D. N.C. Sept. 29, 2006) ("It is well-accepted that unless a contract explicitly prohibits assignment, an assignment is valid over one party's objection."); *Liu v. T&H Mach., Inc.*, 191 F.3d 790, 797 (7th Cir. 1999) (party to underlying contract lacks standing to "attack any problems with the reassignment" of that contract); *Pashak v. Interstate Highway Construction, Inc., No. 189886*, 1998 Mich. App. LEXIS 2553 at 1* (Mich. App. Mar. 20, 1998) ("Although [lessee] challenges the validity of the assignment [of the lease] as between [the assignor] and [the assignees], we find that it lacks standing to do so where the parties to the assignment do not contest its validity."); *Nicolls Pointing Coulson, Ltd. v. Transp. Underwriters of La., Inc.*, 777 F. Supp. 493 (E.D. La. 1991) ("a debtor cannot challenge an assignment of a debt by a creditor unless he can show he is prejudiced by the assignment"); *In re Holden*, 271

7

N.Y. 212, 2 N.E.2d 631 (N.Y. 1936) ("The assignments were valid upon their face. The assignee was the legal owner of the claims assigned. No one could question the validity of the assignments except the assignors."); *Blackford v. Westchester Fir Ins. Co.,* 101 F. 90, 91 (8th Cir. 1900) ("As long as no creditor of the assignor questions the validity of the assignment, a debtor of the assignor cannot do so."); *The Prussia,* 100 F. 484 (D. Wash. 1900) (holding the validity of an assignment cannot be collaterally attacked on the ground of alleged technical irregularities by a non-party to the assignment, where no objection is made by the assigning entity); Richard A. Lord, 29 Williston on Contracts § 74:50 (4th Ed.) ("[T]he debtor has no legal defense [based on invalidity of the assignment]… for it cannot be assumed that the assignee is desirous of avoiding the assignment."). The Debtor has no standing to intervene in or challenge the operation of any agreement involving the transfer or negotiation of the Note and Mortgage. *See Caravella v. City of New York,* 79 Fed. Appx. 452 (2d. Cir. 2003).

In the present case, the Debtor has failed to show any contractual right that would enable him to challenge the validity of the assignment. The Debtor is not a party to the assignment, and as a third-party has no standing to challenge its validity. The Debtor has not suffered any injury as a result of the assignment. There is no change as to whom the Debtor owes his payments. The Debtor is not paying the same monthly mortgage payment twice, nor does he have two creditors competing over being paid on the debt. The Debtor cannot show any injury as a result of the assignment, and cannot prove he has standing to challenge same.

## POINT III

## THE ASSIGNMENT OF MORTGAGE IS VALID

In this Chapter 13 action, Secured Creditor BAC filed a Proof of Claim with respect to real property commonly known as 2484 Ridge Road, Scotia, NY.  BAC is the current holder of a Note and Mortgage on this real property.   BAC is represented by Steven J. Baum, P.C. ("Baum").  The assignment at issue came from Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Home Funding Finders, Inc., the original lender.  The assignment paperwork was executed by Elpiniki Bechakas, Esq., who MERS has granted the title of Assistant Secretary and Vice President.  Ms. Bechakas, an attorney, is also an employee of Baum.

Importantly, MERS is not a party to this action, and is not represented by Ms. Bechakas, Baum, or any other attorney in relation to this matter.   In the Objection to Claim, dated November 16, 2010, ("Objection"), the Debtor suggests that Baum may have violated New York State attorney ethical rules by simultaneously representing clients -- MERS as assignor and BAC as assignee -- with differing interests.  *See* Objection at p. 4.  The Debtor also mischaracterizes other cases involving the Baum Firm in an attempt to argue that the Baum Firm is committing a fraud on the Court.  As explained in detail below, because Baum does not represent MERS, there is no conflict of interest, and Baum's representation of BAC does not any ethical rule proscribing representation of clients with differing interests.  *See, e.g.*, New York Rules of Professional Conduct, Rule 7, codified at 22 N.Y.C.R.R. § 1200.  Therefore, there were and are no violations of any legal ethical rules here.

## A. MERS IS NOT A PARTY TO THIS ACTION

As an initial matter, it is important to differentiate between the parties to this action and MERS. The parties are debtor John C. Szumowski (the "Debtor"), and BAC, the holder of the Note and Mortgage on certain real property. MERS is not a party, and has no legal or other interest in this litigation. MERS has not and will not be appearing in this action.

The courts of New York have noted the unique background and role of MERS. As the New York State Court of Appeals explained in *MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006), the MERS System was created in 1993 by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. The Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Mortgage Bankers Association of America and others participated in the creation of MERS. Members of the MERS System also include entities such as insurance companies, title companies and banks.

The Court of Appeals explained, "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* The initial mortgage is recorded in the County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record. The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office. Rather, such assignments are tracked electronically in the MERS system. *See id.* Once a mortgage is going to be assigned outside of the MERS system, then an assignment like the one at issue is executed and recorded. If the mortgage continued to be

transferred among and between MERS members, then no such assignment would be required. MERS has no legal or beneficial interest in the promissory note, and it does not become holder of the note for the loans for which it serves as mortgagee. *See* NCLC Reports, Bankruptcy and Foreclosures Edition, vol. 23, at 10 (Nov./Dec. 2004).

Following execution of the assignment here, which merely records that the Note was transferred out of the MERS system, MERS retained no interest whatsoever in the mortgage, or in this matter. Because, as explained above, MERS does not become holder of the promissory Note or obtain any legal or beneficial interest in the note, it is not a party to any litigation between the note-holder and mortgagor. Accordingly, it has no interest in the instant matter and is not a party to it.

### B. STEVEN J. BAUM, P.C. DOES NOT REPRESENT MERS

The assignment of the mortgage at issue from MERS to Countrywide was accomplished within the MERS framework and did not create an attorney-client relationship between Baum and MERS. Specifically, the assignment was completed by the execution of paperwork by Elpiniki Bechakas, Esq. on June 30, 2008. Ms. Bechakas is an attorney employed by Baum. She also holds the position of Assistant Secretary and Vice President of MERS pursuant to the signing authority granted to her by MERS. MERS granted this signing authority to Ms. Bechakas -- as well as several other attorneys in several other law firms -- as a convenience to MERS to allow for assignments to be completed expeditiously.

Because MERS is frequently involved in mortgage-related legal proceedings across the country, it streamlined the process for effecting assignments. Specifically, an "Agreement for Signing Authority ("Agreement")" was entered into between MERS, Baum and, in this case,

Countrywide Home Loans, Inc. which granted certain Baum attorneys limited signing authority on behalf of MERS. An accompanying Corporate Resolution from MERS specifically appointed Ms. Bechakas, among other attorneys, an Assistant Secretary and Vice President of MERS (not of Home Funding Finders, Inc.) for the limited purpose of performing a merely ministerial act -- executing mortgage documents, including assignments of mortgages necessary to foreclose on a mortgage loan registered on the MERS system. The Agreement granted Ms. Bechakas signing authority only and nothing more. A copy of this Agreement is annexed hereto. Nowhere does the Agreement nor the Resolution indicate that Ms. Bechakas, Baum, or any attorney or employee of Baum shall act as an attorney for MERS. Importantly, this Agreement was also executed by the Vice President of MERS.

Granting this type of signing authority to outside attorneys has allowed MERS to eliminate the unnecessary and time-consuming steps involved in having the necessary paperwork shuttled back and forth to MERS for signature and execution. Pursuant to this initiative by MERS to streamline the assignment process, several attorneys at Baum, including Ms. Bechakas, received appointments as "Assistant Secretary and Vice President" of MERS. MERS and Baum entered into a specific "agreement for signing authority" which outlined the duties of this appointment, and confirmed MERS' agreement to allow the attorneys to sign certain forms, including the assignments. The agreement does not create an attorney-client relationship between Baum and MERS.

Indeed, the documentary evidence demonstrates that there was no attorney-client relationship between MERS and Baum. Under New York law, an attorney-client relationship "arises only when one contacts an attorney in his capacity as such for the purpose of obtaining legal advice or services." *Priest v. Hennessy*, 51 N.Y.2d 62, 68-69, 431 N.Y.S.2d 511, 514

(1980). Here, the only purpose for granting signing authority to Ms. Bechakas was to allow her to represent Baum's clients more easily, by facilitating the execution of assignments, and not to provide legal advice or legal services for MERS.

There are several factors that courts have considered in determining whether an attorney-client relationship exists, including: (1) whether a fee was paid or fee arrangement entered into; (2) whether there is a written contract or retainer agreement indicating that the attorney accepted representation; (3) whether there was an informal relationship whereby the attorney performed legal services gratuitously; (4) whether the attorney represented the individual in an aspect of the matter, such as a deposition; (5) whether the attorney excluded the individual from some aspect of the litigation in order to protect another client's interests; and (6) whether the purported client believed that the attorney was representing him or her and whether that belief was reasonable. *See Catizone v. Wolff*, 71 F.Supp.2d 365, 368 (S.D.N.Y. 1999) (internal citations and quotations omitted). Each and every one of these questions must be answered in the negative, and demonstrate that there was not and is not an attorney-client relationship between Baum and MERS.

"[F]ormality is not essential to the formation of an attorney-client relationship." *McLenithan v. McLenithan*, 273 A.D.2d 757, 758, 710 N.Y.S.2d 674, 675 (3d Dep't 2000). Rather, "it is necessary to look at the words and actions of the parties to ascertain if such a relationship was formed." *Id.* (internal citations and quotations omitted). Here, the words and actions of MERS and Baum demonstrate that their mutual intention was simply for MERS to delegate signing authority to Ms. Bechakas in order to expedite the assignment. While formality is not essential, it is present in this case in the form of the Agreement for Signing Authority, which memorializes the limited scope of Ms. Bechakas' signing authority, and demonstrates the

absence of an attorney-client relationship.  MERS is a sophisticated business entity.  Had it

wished to form an attorney-client relationship, it could have expressly provided for one in the

written documents that were executed and which govern the relationship between it and Baum.

*See generally W.W.W. Associates, Inc. v. Giancontieri*, 77 N.Y.2d 157, 162, 565 N.Y.S.2d 440,

443 (1990) ("A familiar and eminently sensible proposition of law is that, when parties set down

their agreement in a clear, complete document, their writing should as a rule be enforced

according to its terms.").  There is, quite simply, no reason to look beyond the terms of the

Agreement Corporate Resolution to impose an attorney-client relationship that was neither

intended nor expressed.

In *Chang v. Pi*, 288 A.D.2d 378, 380, 733 N.Y.S.2d 471, 473 (2d Dep't 2001), the trial

court found that the defendant attorneys represented both the buyers and sellers to a real estate

transaction and found that they committed malpractice.  It was undisputed that the defendant

attorneys represented the sellers.  The Appellate Division reversed and held that there was no

attorney-client relationship between the defendant attorneys and the buyers, even though various

documents listed the defendant attorneys as buyers' attorneys because there was also no evidence

that the defendant attorneys undertook any specific task for the buyers relative to their purchase

of the parcels. *See id.*

Likewise here, there can be no dispute that Baum has not been enlisted to perform a

specific task for MERS relative to this action, and there is consequently no evidence that an

attorney-client relationship exists.  *See also Volpe v. Canfield*, 237 A.D.2d 282, 283, 654

N.Y.S.2d 160, 162 (2d Dep't 1997) ("to establish an attorney-client relationship there must be an

explicit undertaking to perform a specific task").  Baum's representation in this matter is limited

to BAC.  BAC holds the Note and has filed a Proof of Claim as to its interest as a secured

creditor in the mortgaged premises.  As explained above, MERS has no interest in this litigation and is not represented by Baum, either in this matter or in any other.

## C. THERE IS NO CONFLICT OF INTEREST

Because, as explained above, Baum does not represent MERS, which is not a party to this action, Baum does not have a conflict of interest in violation of any ethical rule.  New York's Rules of Professional Conduct, Rule 1.7, entitled "Conflict of interest: current clients," provides, in pertinent part:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that either:
>
> > (1) the representation will involve the lawyer in representing differing interests;
>
> (b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
>
> > (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> >
> > (2) the representation is not prohibited by law;
> >
> > (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> >
> > (4) each affected client gives informed consent, confirmed in writing.

The rule prohibits an attorney from undertaking a representation if it will involve the attorney in representing differing interests.  As an initial matter, there is no simultaneous representation by Baum because, as described in the preceding section, Baum does not represent MERS.

Moreover, the interests of MERS are not adverse to the interests of BAC, Baum's client in this matter.  Unlike a servicer, which may have an economic interest in the debt or be the actual or constructive holder of the note, MERS has no legal or beneficial interest in the promissory note, and it does not become holder of the note for loans for which it serves as mortgagee. *See* NCLC Reports, Bankruptcy and Foreclosures Edition, vol. 23, at 10 (Nov./Dec. 2004).  MERS likewise has no beneficial interest in the mortgage in its role as nominee for the holder. *See id.* This is evidenced by language included in the uniform MERS mortgage, which clearly discloses that MERS serves as the mortgagee and as nominee for the lender, its successors and assigns.  In this role, MERS represents the interests of the MERS member-lender when the borrower executes and delivers the note and mortgage, as well as any other MERS members to whom the lender transfers the note.  The fact that an attorney vested with signing authority executed the assignment to Countrywide Home Loans, Inc. does not suffice to create an interest in the assignment on behalf of MERS.  Such a result would be contrary to the entire framework and purpose of MERS, which was established to streamline and expedite the process of mortgage transfers, not to complicate the system by investing MERS with interests in assignments that were not intended or anticipated.

If MERS did have an interest in the mortgage, therefore, it would undoubtedly be aligned with BAC in seeking to protect that interest in this matter.  But, as previously stated, MERS has no interest, and thus there simply is not another interest that could create a conflict of interest for Baum.

In addition, Rule 1.7 provides that an attorney may undertake the simultaneous representation if the attorney can competently represent the interests of each client and if each client consents to the representation after full disclosure. *See* Rule 1.7(b).  Both MERS and

16

Countrywide were and are fully aware of the fact that attorneys employed by Baum have limited authority to execute documents on behalf of MERS. Indeed, the granting of this authority was part of a number of steps taken to streamline the process for both MERS and various foreclosing entities. As such, both MERS and Countrywide were and are fully aware of the implications of this arrangement, the advantages and risks involved, and have fully consented to them. Indeed, the written Agreement between Countrywide, MERS and Baum reflects the consent of all parties to this arrangement.

Thus, the present situation, which involved MERS' grant of signing authority to an attorney employed by Baum for the very purpose of effectuating the type of assignment that is at issue in this case, stands in sharp contrast to those cases where an attorney represents adverse parties in an action. For example, in *In re Rogoff*, 31 A.D.3d 111, 818 N.Y.S.2d 366 (4th Dep't 2006), the uncontroverted evidence established that the same attorney improperly represented both the buyer and sellers in the sale of motel property and did not make the necessary disclosures to either party to the transaction. In such a situation, the attorney clearly has established an attorney-client relationship with each party, and the fact that their interests are adverse to one another is readily apparent. Here, in contrast, there was plainly no attorney-client relationship between MERS and Baum, and, in any event, the extent of MERS' relationship with Baum is fully detailed in the written documents provided. Thus, this situation is entirely distinguishable from *Rogoff*.

### D. THE DEBTOR MISCHARACTERIZES PRIOR CASES INVOLVING THE BAUM FIRM

The Debtor's argument that Baum Firm has been put on notice that its pattern and practice of submitting mortgage assignments by Bechakas was a violation of 22 NYCRR §

17

1200.00 and fatal to its claim of standing is a blatant mischaracterization of the facts and holdings of the cases relied upon by the Debtor.

In regard to the *U.S. Bank, N.A. as Trustee for SG Mortgage Securities Asset-Backed Certificates, Series 2006-FRE2 v. Emmanuel*, 2010 N.Y. Slip. Op 50819U (Sup. Ct. Kings County May 11, 2010), the court found that the creditor lacked standing because the assignment only assigned the mortgage and not the Note. Importantly, nowhere did Hon. Arthur Schack state that the assignment was void because it was executed by Ms. Bechakas. Additionally, while the court noted that there was a conflict of interest, the court also noted that if the action were to proceed, that the Baum Firm would have the opportunity to refute the alleged conflict. Notably, at no time did the court issue any warning to the Baum Firm regarding its procedures.

With respect to *In re Michaud*, your affiant personally appeared for oral argument on the Motion for Relief. At no time did Hon. Allan L. Gropper warn the Baum Firm about its execution of assignments, nor did Hon. Gropper deny the Motion pursuant to the "urging" of the United States Trustee. Rather, what actually occurred was that the Baum Firm had submitted supplemental papers rebutting the United States Trustee's allegations regarding standing, however, Hon. Gropper did not read the supplemental papers prior to the hearing. During the course of the hearing, the United States Trustee attempted to persuade the court that he should be entitled to discovery from the creditor in that case. In an attempt to avoid what inevitably would amount to extensive and costly discovery to the creditor, your affiant recommended that the court deny the motion without prejudice to cure any alleged deficiencies in the initial motion filing. Notably, Hon. Gropper did not issue any warnings to the Baum Firm regarding its procedures, nor did the court render any ruling regarding an alleged conflict of interest or rule

that the creditor lacked standing solely due to the fact that the Assignment was executed by

Bechakas.

### E. THE ASSIGNMENT IS VALID BECAUSE NEW YORK AGENCY AND CONTRACT LAW SUPPORTS MERS' ROLE AS THE DISCLOSED AGENT FOR ITS MEMBER LENDERS.

New York State case law has recognized that MERS has the right not only to record its

assignments and discharges of mortgages, but also to outright foreclose on and sell property

subject to one of its mortgages. *See e.g. MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828

N.Y.S.2d 266, 268 (2006), *Mortgage Electronic Registration Systems, Inc. v. Coakley*, ___

A.D.2d ____, 2007 N.Y.Slip Op. 05478 (2d Dept. June 19, 2007); *see also U.S. Bank, N.A. as*

*Trustee for Deutsche ALT-A Securities Mortgage loan Trust Series 2007-2 v. Flynn*,

____A.D.2d____; 2010 N.Y. Slip. Op. 20093 (Sup. Ct. March 12, 2010) (written assignment of

the note and mortgage by MERS confers good title to the assignee and is not defective for lack of

an ownership interest in the note at the time of the assignment.)  Though the Debtor points to one

case by one Judge sitting in Kings County that has taken issue with the MERS assignments, it is

important to note that other Judges sitting across New York State have accepted the assignments

without question.

MERS' status as a "nominee" is a common occurrence in public land records.

Individuals frequently confer rights to a "nominee," "agent," "fiduciary," or "trustee" to enable

that individual to act on their behalf. *See*, for example, New York Real Property Law (RPL)

§§124 *et seq.* with regard to trustees' powers in mortgage investments.  The term "nominee" was

defined in *Schuh Trading Co. v. Commissioner of Internal Revenue*, 95 F.2d 404, 411 (7th Cir.

1938), as follows:

> The word nominee ordinarily indicates one designated to act for
> another as his representative in a rather limited sense.  It is used
> sometimes to signify an agent or trustee.  It has no connotation,
> however, other than that of acting for another, or as the grantee of
> another . . .

This definition has become accepted as the common meaning of "nominee."  *See* Black's Law Dictionary 1076 (8th ed. Thompson West 2004).   Nominees have often been used by institutional investors in securities registration, to allow the investor to avoid onerous requirements of establishing the right of registration by a fiduciary.   In addition, RPL §275(2)(a) expressly recognizes the commercial practice of lenders selling mortgages in the secondary market, as well as the practice of designating "nominees" as representatives in mortgage loan transactions.

It is familiar practice in real estate transactions to use a nominee for a variety of purposes, including to execute or hold mortgage instruments.  *Friedman on Contracts and Conveyances of Real Property* § 2.2 (6th Ed.).   The validity of nominees in real property transactions has been upheld in New York.  For example, in *In Re Cushman Bakery*, 526 F.2d 23, 30 (1st Cir. 1975) (*citing* New York law), *cert. denied* 425 U.S. 937 (1976), the court noted:

> it is clear that the recording of the real estate mortgages and financing
> statements was entirely proper despite the fact that Bakers, as Seaboard's
> nominee, rather than Seaboard, as the principal creditor, was named as
> the mortgagee and secured party.  The use of a nominee in real estate
> transactions and as mortgagee in a recorded mortgage has long been
> sanctioned as a legitimate practice.   (citations omitted) (Emphasis
> added).

The use of a nominee or agent as a representative of the lender or the mortgagee has been upheld in New York.  *See e.g. Fairbanks Capital Corp. v. Nagel*, 289 A.D.2d 99 (1st Dep't 2001) (holding that the servicing agent had standing to maintain a mortgage foreclosure proceeding in its capacity as servicing agent for the trustee lender); *Amherst Factors, Inc. v. Kochenburger*, 4 N.Y.2d 203 (1958); *Mutual Life Ins. Co. v. Nichols*, 144 A.D. 95 (1st Dep't 1911); *In Re Fried*

*Furniture Corp.*, 293 F. Supp. 92 (E.D.N.Y. 1968), *aff'd* 407 F.2d 360 (2d Cir. 1969). New York courts have also recognized the rights of trustees and agents to act on behalf of lenders in a variety of situations. *See, e.g., In Re Lehrenkrauss*, 6 F. Supp. 687 (E.D.N.Y. 1934) (noting that certificates of participating interests in a mortgage made the nominal mortgagee, the trustee and nominee for the certificate holders with the lawful authority to collect interest and principal, distribute such monies and, among other powers, to take such action as may be necessary to enforce the note and mortgage).

The uniform MERS Mortgage clearly demonstrates the lender's delegation of authority to MERS, as its agent in the MERS Mortgage, and the borrower's acknowledgement and acceptance of MERS as the agent of the lender, and its successors and assigns. The MERS Mortgage expressly authorizes MERS to execute assignments, discharges, releases and other documents with respect to the mortgage and security instrument on record in the County Clerk's Office. The MERS Mortgage, being the same form of mortgage executed by the Debtor in the instant proceeding, provides, in relevant part, as follows:

> I [the borrower] understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:
>
> (C) <u>to exercise any or all of those rights</u>, including, but not limited to, the right to foreclose and sell the Property; and
>
> (D) <u>to take any action required of Lender, including, but not limited to, releasing and canceling this Security Instrument</u>.

(Emphasis added).

It is well settled in New York that where a mortgage is signed by the mortgagor, delivered to and accepted by the mortgagee, <u>or its agent</u>, the mortgage constitutes a valid contract and security or

21

lien. *See Munoz v. Wilson*, 111 N.Y. 295 (1888); *Wood v. Travis*, 231 A.D. 331 (3d Dep't 1931).

The recording of a mortgage is presumptive evidence of delivery by the mortgagor and acceptance

by the mortgagee. *See Preston v. Albee*, 120 A.D. 89 (1st Dep't 1907).

As set forth more fully above, the agreement to treat MERS as the lender's agent is

contractual between the borrower and lender. The terms of the MERS mortgage are clear and

certain and, as such, the Court's role is limited to interpretation and enforcement of contractual

terms. *Strong v. Reeves*, 114 N.Y.S.2d 97 (3rd Dept. 1952); *JJFN Holdings, Inc. v. Monarch*

*Investment Properties*, 736 N.Y.S.2d 66 (2nd Dept. 2001); *Salvano v. Merrill Lynch, Pierce, Fenner*

*& Smith, Inc.*, 623 N.Y.S.2d 790 (1995). Further, it is well-settled that the Court has no authority to

make a new contract for the parties or recast the contract between them. *LaVere v. R.M. Burritt*

*Motors, Inc.*, 446 N.Y.S.2d 851 (New York City Ct. 1981); *see also, Mitler v. Friedeberg*, 222

N.Y.S.2d 480 (N.Y. Sup. 1961); *Nemmer Furniture Co. v. Select Furniture Co.*, 208 N.Y.S.2d 51

(N.Y. Sup. 1960); *Empire Sportswear, Inc. v. Newsday, Inc.*, 178 N.Y.S.2d 833 (N.Y. Sup. 1958),

*affirmed by* 185 N.Y.S.2d 78 (2nd Dept. 1959); *Royce Furs, Inc. v. Home Ins., Co.*, 291 N.Y.S.2d

529 (1st Dept. 1968); *Barrand v. Quinn*, 98 N.Y.S.2d 1013 (4th Dept. 1950), *affirmed by* 302 N.Y.

744 (1951).

It is clear, therefore, given the text of the Mortgage executed by the Debtor that MERS has

been designated as the mortgagee, and as nominee or agent of the lender. When MERS executes

instruments as the nominee or agent for the lender, its successors and assigns, MERS is vested with

explicit powers to act with respect to the mortgage and the secured real estate. Pursuant to the clear

and unequivocal terms of the mortgage instrument, Debtor expressly agreed without qualification

that MERS had the right to foreclosure upon the premises as well as ***exercise any and all rights*** as

nominee for the Lender. *See e.g. MERS, Inc. v. Coakley*, (support for MERS's standing to

commence the action may be found on the fact of the mortgage instrument itself where the Debtor expressly agreed without qualification that MERS had the right to foreclose).   Based on the foregoing, the assignment from MERS to Countrywide is valid.

Additionally, it is a fundamental principle that the courts should not interfere with the contractual rights set forth in a mortgage agreement.  The Court of Appeals held:

> To treat this mortgage as a mechanic's lien, as the Appellate Division did, would constitute an impairment of the obligations of the contract that the parties chose to make.  Absent clear statutory authorization to do so, the court should not interfere with such rights.  (Emphasis added).

*W. L. Development Corp. v. Trifort Realty, Inc.,* 44 N.Y.2d 489, 499 (1978).

An agreement entered into by an agent pursuant to authority granted by the agency agreement or by instruction of the parties is valid and enforceable.  *99 Commercial Street Inc. v. Goldberg,* 811 F.Supp. 900, 906 (S.D.N.Y. 1993).  An agency agreement may take any form "desired by the parties concerned."  New York General Obligations Law §5-1501(1).  Indeed, the public policy of New York requires that there be liberal use and judicial recognition of the efficacy of principal and agency relationships.  *See Arens v. Shainswitt,* 37 A.D.2d 274 (1st Dep't 1971), *aff'd* 29 N.Y.2d 663 (1971); *Cymbol v. Cymbol,* 122 A.D.2d 771 (2d Dep't 1986).

MERS' relationship with its member lenders is that of agent with the lender-principal. This is a fiduciary relationship, which results from the manifestation of consent by one person to another allowing the other to act on his behalf, subject to his control and consent.  The principal is the one for whom action is to be taken, and the agent is the one who acts.  *See* Restatement [Second] of Agency § 1(b)(c); *see also Maurillo v. Park Slope U-Haul,* 194 A.D.2d, 142, 146, (2d Dep't 1993); *Cabrera v. Jakabovitz,* 24 F.3d 372 (2d Cir. 1994), *cert. denied,* 513 U.S. 876 (1994).  An agency relationship may be established by conduct, an oral agreement or a written

23

instrument. *See Heine v. Papp*, 97 A.D.2d 929 (3d Dep't 1983). An agent may be appointed to do the same acts and to achieve the same legal consequences as if the principal had himself personally acted, except as to acts which by their nature, by public policy, or by contract require personal performance or acts which are illegal. *See Central Trust Co. v. Sheahen*, 66 A.D.2d 1015 (4th Dep't 1978).

In *MERSCORP, Inc. v. Romaine*, the New York Court of Appeals rejected the Suffolk County Clerk's arguments that the MERS Mortgage was improper and did not constitute a conveyance because it named MERS as a nominee and that MERS could not serve as a "mortgagee." The Court of Appeals explained, "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* The initial mortgage is recorded in the County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record. The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office. Rather, such assignments are tracked electronically in the MERS system. *See id.* Once a mortgage is going to be assigned outside of the MERS system, then an assignment like the one at issue is executed and recorded. If the mortgage continued to be transferred among and between MERS members, then no such assignment would be required. The Court of Appeals found that the uniform MERS Mortgage and assignments and discharges executed by MERS constituted conveyances entitled to be recorded in County Clerks' offices in New York.

Likewise, the court in *US Bank, N.A. v Flynn*, 2010 NY Slip Op 20093, 4 (N.Y. Sup. Ct. 2010) found that

"where an entity such as MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, its successors and assigns, a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment. In such cases, MERS is acting as the nominee of the owner of the note and of the mortgage, in which MERS is additionally designated as the mortgagee of record. No disconnect between the note and mortgage occurs when MERS acts, at the time of the assignment, as the nominee of the original lender or a successor owner or holder of the note and mortgage. Consequently, a MERS assignment does not violate this State's long standing rule that a transfer of a mortgage without a concomitant transfer of the debt is void."

Similarly, Federal Courts across the United States have also found that MERS has the authority to execute assignments as a nominee for a lender. In *Kiah v. Aurora Loans Services*, 2010 U.S. Dist. LEXIS 121252 (Dist. M.A. November 16, 2010), the court found that MERS could assign the mortgage even if it "never had possession of or a beneficial interest in the note…because MERS was holding the mortgage in trust…." 2010 U.S. Dist. LEXIS 121252 at *17. The court also found that "even though MERS does not have a beneficial interest in the property, it nonetheless could have transferred the mortgage on behalf of the beneficial owner." 2010 U.S. Dist. LEXIS at *18.

Likewise in *Perry v. Nat'l Default Servicing Corp.*, 2010 U.S. Dist. LEXIS 92907 (Dist. N.D.C.A. August 20, 2010) also upheld an assignment from MERS to Kondaur Capital Corporation because the Deed of Trust stated that MERS was nominee for the Lender, and also contained the MERS Mortgage language where in the Borrower agreed that MERS held legal title and had the right to foreclose. The court there found that the Debtor had initialed that page of the Deed of Trust and found that "the plain language of the Deed, MERS was the beneficiary and could exercise 'all of [Borrower's] interests,' including foreclosure rights." 2010 U.S. Dist.

25

LEXIS 92907 at 11. The court went on to state that "courts interpreting trust deeds appointing

MERS as beneficiary and nominee, as this one does, have held that 'MERS had the right to

assign its beneficial interest to a third party.'" *Id. See also Croce v. Trinity Mortg. Assur. Corp.*

2009 U.S. Dist. LEXIS 89808 (Dist. NV September 28, 2009) (court found that MERS had

standing as a beneficiary under the Note and Deed of Trust to participate in the foreclosure

proceedings);

Whether MERS is identified as the "mortgagee" or the "nominee" (that is, the agent) for the

lender in a mortgage instrument, MERS fits squarely within the scope of persons authorized by Real

Property Actions and Proceedings Law ("RPAPL") §1921(9) (a) to serve as a mortgagee and

execute and deliver discharges of mortgages:

> Mortgagee" means (i) the current holder of the mortgage of record or
> the current holder of the mortgage, or (ii) any person to whom
> payments are required to be made or (iii) their personal
> representatives, agents, successors, or assigns. (emphasis added).

Similarly, RPAPL §1921-a requires the mortgagee, as defined above, to execute and

deliver partial releases of lien. In other statutory mandates, the RPL obligates the mortgagee to

perform various transactions. For example, RPL §274-a requires the mortgagee to execute and

deliver a loan payoff statement and other mortgage-related documents, such as abstracts of title

and title insurance policies in the mortgagee's possession. RPL §275 requires the mortgagee to

execute and deliver a discharge of mortgage upon tender of payment, and also authorizes the

mortgagee to execute and deliver an assignment of mortgage if it is traded or sold in the

secondary mortgage market. Because the MERS Mortgage names MERS the "mortgagee," and

the mortgage discloses that MERS is the "nominee" or "agent" for the lender, its successors and

assigns, and as shown above, MERS is fully authorized to perform the duties of the mortgagee in

accordance with these statutory mandates, including the execution and delivery of the assignment of mortgage at issue in this proceeding.

Based on the foregoing, the assignment from MERS to Countrywide Home Loans, Inc. was authorized and valid. A review of the Mortgage demonstrates that the Debtor agreed that MERS was the mortgagee of record and nominee for Home Funding Finders, Inc. Accordingly, the assignment executed by MERS as the authorized and disclosed agent for the lender and its successors in interest is valid and effective.

## POINT IV

### THERE IS NO EVIDENCE THAT THE SECURED CREDITOR HAS COMMITTED A FRAUD UPON THE COURT OR OTHERWISE ACTED IN BAD FAITH.

It is improper for the court to issue sanctions where there is no indicia of bad faith. *See In re Jensen,* 2010 Bankr. LeXIS 231 at*5 *citing Wilder v. GL Bus Lanes,* 258 F.3d 126. 130 (2d Cir. 2001). "Bad faith…is characterized as an attempt to abuse the judicial process…and [requires the Court] to determine if that party has misrepresented facts in its submissions to the Court." *In re Gorshtein,* 285 B.R. 118, at 124 (Bankr. S.D.N.Y. 2002). Similarly, "'bad faith'…means that the party was motivated by improper purposes… or "if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose…." *Grand St. Realty v. McCord,* 2005 U.S. Dist. LEXIS 45314 at *25 (E.D.N.Y. September 30, 2005). "The finding of bad faith must be supported by 'a high degree of specificity in the factual findings' of the sanctioning court." *McCord,* 2005 U.S. Dist. LEXIS 45314 at *25. "Courts must find bad faith based on clear evidence." *Minbatiwalla,* 424 B.R. at 120.

In the present case, the Debtor alleges that the execution of the assignment was in bad faith and a fraud on the Court. As previously explained, the execution of the assignment was performed pursuant to a mutual agreement entered into between MERS, Countrywide, and the Baum Firm that entitled Ms. Bechakas to execute the assignment. It is clear that by entering into said Agreement the parties to that Agreement were all aware of the roles that would be undertaken. Notably, the Debtor's counsel points to no basis, case law, ethical rule, or legal requirement that would require the disclosure *to this court*. The only disclosure necessary would be between MERS and Countrywide, which clearly was done when entering into the Agreement. The Debtor cannot show that the execution of the assignment was meritless, nor that the assignment was executed for improper purposes. Therefore, the Debtor has failed to establish any bad faith and the request for sanctions must be denied.

## CONCLUSION

Based on the foregoing, the Debtor's Objection to Claim should be denied in its entirety, together with such other and further relief as the Court deems just and proper.

Dated: January 5, 2011
      Buffalo, NY

Natalie A. Grigg, Esq.