UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re

    JOHN C. SZUMOWSKI

Case No. 10-12431

                    Debtor.

## APPLICATION REQUESTING A PROTECTIVE ORDER UNDER RULE 26(c)

Natalie A. Grigg, Esq., an attorney duly admitted to practice before the United States Bankruptcy Court for the Northern District of New York, states the following:

1. I am an associate with Steven J. Baum, P.C., the attorneys for BAC Home Loans Servicing, LP (BAC), a secured creditor of John C. Szumowski (the "Debtor"), and as such, am fully familiar with the facts and circumstances contained herein.

2. This Affirmation is submitted in support of BAC's Motion for a Protective Order pursuant to Section 107(b) of the Bankruptcy Code and Rules 7026(c) and 9018 of the Federal Rules of Bankruptcy Procedure

## FACTUAL BACKGROUND

3. On September 9, 2004, the Debtor and non-debtor Catherine Szumowski executed a Note and Mortgage in the amount of $125,000.00 secured by property located at 2484 Ridge Road, Scotia, New York (the "Property"). The Note was executed by the Debtor and non-debtor to Home Funding Finders, Inc., and the Mortgage was executed by the Debtor and non-debtor granting a lien against the Property in favor of Mortgage Electronic Registration System, Inc. ("MERS") as nominee for Home Funding Finders, Inc. Upon closing, Countrywide Home Loans, Inc.

1

("Countrywide") became the holder of the Note and Mortgage. A copy of the Note and Mortgage are attached hereto as **Exhibit A**.

4. The Assignment of Mortgage was executed from MERS as nominee for Home Funding Finders, Inc. to Countrywide on June 30, 2008 and recorded in the Office of the County Clerk for the County of Schenectady on July 15, 2008. A copy of the Assignment is attached hereto as **Exhibit B**.

5. BAC is the current holder and has possession of the original Note.

6. On September 27, 2010, BAC filed a Proof of Claim, with a copy of the Note, Mortgage, and Assignment attached thereto. A copy of the Proof of Claim is attached hereto as **Exhibit C.**

7. On or about November 18, 2010, the Debtor filed an Objection to Claim challenging the BAC's standing to file the claim. The Debtor's Objection contested that BAC failed to provide proof of a complete chain of title and contested the validity of the Assignment of Mortgage.

8. On January 6, 2011, BAC filed an Affirmation in Opposition to Debtor's Objection to Claim and supporting Memorandum of Law. BAC set forth proof that it was the current holder of the Note and thus was entitled to enforce the Note. The Opposition also explained the chain of title and the role of Mortgage Electronic Registration Systems (MERS). BAC argued that the Debtor's lacked standing to challenge the validity of the assignment because he is not a party to the assignment between MERS and Countrywide. BAC also addressed the Debtor's allegations regarding any alleged conflict of interest regarding the execution of the assignment.

9. On January 6, 2011, the U. S. Trustee filed a Response to Debtor's Objection to Proof of Claim and BAC's Objection to Confirmation. The U.S. Trustee took the position that BAC was not a creditor of the Debtor, and that the information contained in the proof of claim and objection to confirmation had not been adequately verified.

10. On January 10, 2010, BAC filed an Affirmation in Opposition to the U.S. Trustee's Response. BAC stated that it had provided evidence that it is the holder of the note and that it had previously explained the relationship between Countrywide and BAC in its response to the Debtor's Objection to Claim. BAC went on to argue that the U.S. Trustee's recommendation that sanctions be imposed was procedurally improper. BAC also argued that there was no evidence of bad faith or intent to deceive that would otherwise permit sanctions.

11. On January 13, 2011, the Debtor, BAC, and U.S. Trustee appeared for an initial hearing regarding the Objection. At that time, your affiant confirmed that BAC was in possession of the original Note and would produce the original Note for inspection by the U.S. Trustee. The Court adjourned the hearing to February 10, 2011. BAC was instructed to submit further papers addressing issues that had arisen during the course of the hearing.

12. On the 28th day of January, 2010, a Memorandum of Law was submitted by Vincent E. Doyle, Esq. on behalf of Steven J. Baum, P.C. as counsel for BAC setting forth that there was no conflict of interest arising from the execution of the assignment by Ms. Bechakas, an employee of the Baum firm, and the Baum firm's representation of BAC; and that the Baum firm had valid consent from both MERS and the client. On that same day, BAC submitted a Memorandum of Law explaining that the underlying mortgage transaction was valid and that the Assignment of Mortgage would have no bearing on the validity of the underlying commercial transaction.

13. On February 9, 2011, BAC filed a copy of the original Note with the Court. The copy provided is a true and accurate copy of the original Note.

14. On February 10, 2011, a status conference was held with the Court to inform the Court regarding the U.S. Trustee's inspection of the original Note and to further discuss the course of

3

discovery. A copy of the transcript from the February 10, 2011 conference is attached hereto as **Exhibit D**.

15. On the 16th day of March, 2011, the Debtor sent a request to BAC to produce original documents for inspection and "forensic testing." A copy of the Request is attached hereto as **Exhibit E**.

16. On April 18, 2011, BAC served a response to the Debtor's Request for Inspection and Forensic Testing objecting to the Debtor's Request. A copy of the response is attached hereto as **Exhibit F**.

## ARGUMENT

### POINT I

#### THE DEBTOR HAS FAILED TO COMPLY WITH THE COURT'S INSTRUCTIONS IN MAKING THIS REQUEST

17. It is understood that "the liberality of the discovery rules provides significant opportunity for abuse by the parties seeking discovery." *Hasbrouck v. BankAmerica Hous. Servs.*, 187 F.R.D. 453, 455 (N.D.N.Y 1999) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)). As a result, "the Court possesses wide latitude, under Fed. R. Civ. P. 26 and Bankruptcy Rules 7026 and 9014, to issue a protective order for the purpose of 'protecting a party or person from annoyance, embarrassment, oppression, or undue burden or expense.'" *In re Wright*, 220 B.R. 543, 545 (S.D.N.Y. 1998) (quoting Fed R. Civ. P. 26(c)).

18. "A protective order may provide 'that the disclosure or discovery may be had only on specified terms and conditions.'" *In re Wright*, 220 B.R. at 545 (quoting Fed. R. Civ. P. 26(c)(2)). *See also In re Hotel Syracuse, Inc.*, 1991 U.S. Dist. LEXIS 18580 at *7 n. 3 (N.D.N.Y Dec. 18, 1991) ("Under Fed. R. Civ. P. 26(c), as referenced by Fed. R. Bankr. P. 7026, a party from whom

4

discovery is sought may move the court for cause shown for a protective order prohibiting or limiting the discovery sought.").

19. "Rule 26 vests the trial judge with broad discretion to tailor discovery narrowly." *Crawford-El v. Britton*, 523 U.S. 574, 598, (1998); *see also Kunstler v. City of New York*, 2006 U.S. Dist. LEXIS 61747 (S.D.N.Y. Aug. 29, 2006) ("This provision gives the court broad discretion to tailor discovery to the needs of the case and the interests of the discovered party, and in doing so the court may 'undertake some substantive balancing of interests.'") (citation omitted); *Tri-Star Pictures, Inc. v. Unger*, 171 F.R.D. 94 (S.D.N.Y. 1997) (Rule 26 "directs a court to 'examine the burdens potentially to be borne by the various parties if the contemplated discovery is performed, and to limit such if it determines that the burdens or expenses of the discovery outweighs the benefits.'"). "While Rule 26(b)(1) still provides for broad discovery, courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition....'" *Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004).

20. The instant motion seeks the Court's intervention per its powers to limit discovery by precluding the forensic testing sought by the Debtor. Federal Rule of Bankruptcy Procedure 7034 provides that a request "must specify a reasonable time, plan and manner ...." Fed. R. Bankr. Pro. 7034. The Debtor failed to set forth any of these requirements, but, most importantly, Debtor has failed to establish either the relevance of this request or the manner of the proposed testing.

21. The issue regarding forensic testing was raised by Debtor's Counsel during a conference held on February 10, 2011. At that time, this Court gave the Debtor's counsel explicit instructions as to how to proceed. In discussing the Debtor's request for forensic analysis, this Court gave Debtor's counsel the following instructions: "[I]f we're going to get creative I would simply ask the parties to go far enough so that you can give me some basis, Mr. Kim, why it's relevant and on the

5

other side, why it isn't." *See* Exhibit C. Moreover, the Court went on the explain: "[I]f you [Mr. Kim] feel [the testing] to be a necessity, that's fine, but I think you would need to address Ms. Grigg's concerns as to . . . who does this, how they do it, where they do it, those kind of details so that any concerns that Ms. Grigg brought up today could be adequately addressed, and we're not talking about housekeeping problems. It's the substance, is it relevant, is it necessary, those that go to the heart of the issue." *Id.* at 36.

22. It is readily apparent from the Debtor's request that it has been made in absolute disregard for these clear instructions. As the Debtor is unable to follow the verbal instructions issued by this Court, BAC requests that the Debtor be precluded from performing forensic testing.

23. A review of the Debtor request for testing demonstrates that the Debtor wholly failed to comply with even the basic requirements under Federal Rule of Bankruptcy Procedure 7034, let alone the conditions placed by this Court.

**A. Debtor's request for "forensic testing" is irrelevant.**

24. As an initial matter, Debtor has failed to establish any relevant basis for a "forensic testing." The burden is on the party seeking discovery to "explain how or why the [discovery] would be relevant to [his] claims." *Wright-Jackson v. HIP Health Plan*, 2009 U.S. Dist. LEXIS 31935, at *4 (S.D.N.Y. Apr. 15, 2009); *accord Salvatorie Studios Int'l v. Mako's Inc.*, 2001 U.S. Dist. LEXIS 11729, at *1 (S.D.N.Y. Aug. 14, 2001). BAC has possession of the original note and has provided the original for inspection. The Debtor has presented no argument as to why a "forensic inspection"—whatever that means—is necessary here. Absent a relevant basis for forensic testing, the Debtor's request should be denied.

6

25. As the Court is aware, BAC is the holder of a negotiable instrument and cannot allow these original documents out of its possession and control. BAC has already set forth ample proof regarding when it took possession of the original Note as well as set forth an explanation as to the relationship of various entities. The Debtor has failed to show how testing of the original Note will lead to the discovery of admissible evidence, particularly as it relates to the issues before this Court. In the course of discovery, BAC has produced a document custody screen that documents when the Note and collateral file was received by BAC.

**B. Debtor has failed to comply with the Federal Rules of Bankruptcy Procedure 7034.**

26. Moreover, on its face, the request fails to set forth the reasonable time, place, or manner of inspection. These basic details must be provided under Federal Rule of Bankruptcy Procedure 7034, and Debtor's failure to comply with the discovery rules warrants protection.

27. More importantly, however is the fact that the Debtor failed to make any attempt to address the concerns raised by BAC—and acknowledged by the Court—regarding why the testing is necessary, who would be conducting the testing, how the testing would be done, what the testing would consist of, where it would occur, and various other assurances that such testing would be conducted in a manner that would preserve the integrity of the documents while they remained within the possession and control of BAC. The Debtor's failure to include these specifications can only be read as implying that the Debtor does not know how the testing would be conducted, or what is really sought to be achieved.

28. A protective order denying the Debtor's request for forensic testing is necessary because the Debtor's request does not elaborate on what such testing consists of. By its nature, forensic testing could encompass a broad spectrum of testing including handwriting analysis or examination,

7

ink testing, document comparison, or diplomatics. Forensic examinations and comparisons may involve handwriting and signatures, printing processes, ink, pencil and paper, alterations, additions, erasures, obliterations, indentation detection, physical matching, typewriters, photocopiers, laser printers, fax machines, rubber stamps, and sequence determination. As the request stands presently, BAC is unable to determine what sort of forensic testing and/or examination the Debtor intends to perform on the original Note.

29. As a result of the Debtor's blatant failure to identify the manner of testing, BAC is left to speculate whether the testing will be destructive or nondestructive, what protocol will be used for the testing, whether the testing will obtain the desired evidence, whether there are alternative methods of testing, or what safeguards are in place to protect BAC's interests.

30. The Debtor's request does not identify the expert or elaborate on the qualifications of the expert that would be conducting such testing. BAC thus has no assurance that the documents will be handled properly and in compliance with appropriate industry standards, even if such testing could conceivably be conducted without causing damage to the negotiable instruments.

31. Likewise, the Debtor's request does not elaborate on the type of facility where such testing will occur, or the tools to be used during such testing, so that BAC may contemplate whether such testing can be done while maintaining the integrity of the original instruments. This request is thus profoundly prejudiced against the interests of BAC who should not have to bear the risk of the Debtor's investigations causing irreparable damage to the original Note.

32. It is within this Court's discretion to impose reasonable conditions surrounding the request to test tangible objects or to deny such testing altogether. The Court directed the Debtor's attorney to set forth the relevant basis for testing and the details of how such testing would be conducted.

The Debtor has wholly ignored the Court's instructions, thus necessitating the entry of a protective order.

33. Further, in addition to those requirements set forth by the Court, a representative of BAC should be present at all times during the testing should the Court permit the testing to proceed. As mentioned previously, BAC cannot relinquish possession and control of the original Note because it is a negotiable instrument that must remain with BAC. The Note in question is endorsed in blank, and the bearer of such instrument has the right to enforce its terms. BAC should not be forced to bear the risk of the Note being lost or stolen.

34. In addition to requesting that the original Note be produced, the Debtor has also requested production of the original collateral file/mortgage file/investor file/legal file. Again, Debtor has failed to specify why "forensic testing" of these documents is necessary and what inspection and/or testing will be done on this file. At this juncture, it appears that Debtor has merely set forth a variety of requests with no purpose other than to harass BAC. The Debtor has already admitted that he executed a Note dated September 9, 2004 in the amount of $125,000.00 to Home Funding Finders. A copy of the collateral file has been produced to the Debtor's attorney and U.S. Trustee in the course of exchanging documents. It is unclear as to what purpose is served by testing the collateral file or what bearing it has on the issues before this Court.

35. The request as it currently stands serves only to oppress and cause undue burden and expense to BAC within the meaning of Fed. R. Civ. P. 26(c). As such, BAC respectfully requests this Court enter a protective order precluding the inspection and forensic testing as requested by the Debtor.

## POINT II

### BAC NEED ONLY PRODUCE THOSE DOCUMENTS IN ITS POSSESSION, CUSTODY, AND CONTROL.

36. Under Rule 34(a), parties may request from their adversaries documents "which are in the possession, custody or control of the party upon whom the request is served." *In re NTL, Inc. Sec. Litig.*, 244 F.R.D. 179, 195 (S.D.N.Y. 2007). "The test for production is control, not location . . . . [D]ocuments are considered to be under a party's control when that party has the right, authority or practical ability to obtain the documents . . ." *Id.* (citations omitted). "The courts have interpreted Rule 34 to require production if the party has the practical ability to obtain the documents . . . ." *Id.* (citation omitted); *see also Shcherbakovskiy v. Da Cap Al Fine, Ltd.*, 490 F.3d 130, 138 (2d Cir. 2007) ("[A] party is not obliged to produce, at the risk of sanctions, documents that it does not possess or cannot obtain."). Moreover, the Debtor has the burden to establish that BAC could not produce the document. *In re Lozano*, 392 B.R. 48 (Bankr. S.D.N.Y. 2008).

37. *In re Lozano* is especially instructive here. In that case, the debtor filed an adversary proceeding against the trustee of a mortgage asset pool and the servicer, among others. *Id.* at 52. The trustee and servicer "agreed to produce all documents in their possession, custody or control relating to the mortgage loans . . ., including any part of the original . . .loan files that they ha[d] in their possession." *Id.* The debtor argued that the trustee and servicer should be compelled to obtain and produce the documents in the possession, control or custody of the loan originator. *Id.* The bankruptcy court, however, held that "[s]ince [d]ebtors have not shown that [the servicer] and [trustee] are agents of [the loan originator] or acting on its behalf, nor have they shown that [the servicer] and [trustee] have the practical ability to obtain the disputed documents from [the loan originator], [they] cannot be compelled to obtain documents from [the loan originator] and produce them to [d]ebtor's counsel." *Id.* at 53.

38. Similarly, here BAC should not be required to produce documents not within its possession, custody, and control. By his Request for Inspection and Testing the Debtor seeks to have BAC produce the original Mortgage and the original Assignment of Mortgage. Notably, both of these documents are filed on record with the Office of the County Clerk for Schenectady County. As such, the documents are not within BAC's possession, custody, and control. Accordingly, BAC is under no obligation to produce documents that it cannot obtain.

## POINT III

### TESTING OF THE ORIGINAL AFFIDAVIT OF CAROLIN HOFF IS IRRELEVANT TO THE ISSUES AT HAND.

39. The Debtor's request for inspection and forensic testing also seeks that BAC produce the original Affidavit executed by Carolin Hoff. While Federal Rule of Bankruptcy Procedure 7026 permits discovery into any nonprivileged matter that is relevant to any party's claim or defense or which would be reasonably calculated to lead to the discovery of admissible evidence.

40. "Some threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992).

41. Again, Debtor fails to state why "testing" is necessary or what such "testing" will entail. The testing of the original Affidavit would not lead to the discovery of admissible evidence. All of the information contained within the Affidavit can be confirmed either through the documents that BAC has supplied in response to the Debtor's discovery demands or through depositions. The "testing" of the Affidavit will not reveal any evidence that would have a bearing on the issue before this Court, to wit: whether BAC has standing to file the Proof of Claim in the Debtor's case.

11

42. Based on the foregoing, the Court should enter a protective order precluding the Debtor from inspecting or testing the requested documents.

WHEREFORE, it is respectfully requested that BAC's Motion be granted in its entirety, together with such other and further relief as this Court deems just and equitable.

Dated: April 19, 2011
      Buffalo, New York

/s/ Natalie A. Grigg
Natalie A. Grigg, Esq.