UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
_____

|  |  |
|---|---|
| In Re: John C. Szumowski | ) |
|  | ) |
|  | )  Case No.: 10-12431 |
| Debtor(s) | )  Chapter 13 |
| Address:    2484 Ridge Road | ) |
|              Scotia, NY 12302 | ) |
|  | ) |
| _____ __ ) |  |

AFFIRMATION OPPOSING BAC HOME
LOANS SERVICING, LP'S MOTION
FOR PROTECTIVE ORDER

STATE OF NEW YORK       )
COUNTY OF SARATOGA    ) ss.:

**RONALD J. KIM**, being duly sworn, deposes and says:

1. I am admitted to practice law in the Northern District of New York and I am the attorney of record for John C. Szumowski ("Szumowski") in his Chapter 13 bankruptcy.

2. As Szumowski's attorney, I am familiar with the facts and circumstances surrounding his Chapter 13 petition and the instant Motion for Protective Order filed by BAC Home Loans Servicing, LP ("BAC") and its attorney of record, Steven J. Baum, P.C. ("Baum Firm")

3. I make this affirmation opposing the Motion for Protective Order based on my review of the submissions by BAC, and the Baum Firm and in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

4. Currently the Court has before it Debtor's Objection to BAC's Proof of Claim. Debtor asserts that BAC lacks adequate standing because it is not the real party in interest and thus the claim should be properly expunged. See Fed. R. Civ. P. 17.

5. BAC, via the Baum Firm, has filed the instant motion for protective order objecting to the debtor's request for the production of several documents, including the original note, mortgage, collateral file and the Affidavit of Carolin Hoff to perform non-destructive forensic testing.

6. BAC, via the Baum firm, filed its objections only one day before seeking the motion for protective order, never requesting a conference with our office to attempt to resolve at least some of the discovery disputes in its motion, as required by the Federal Rules of Civil Procedure, the Bankruptcy Rules of Civil Procedure and the Local Rules of this Court.

7. This Court's Local Rule 7026-2(a) is unequivocal:

> **No** discovery motion shall be heard by the court unless counsel for movant files with the court an affidavit at or prior to the hearing on the motion certifying that counsel for the movant has conferred with counsel for the opposing party in a good faith effort to resolve by agreement the issues raised by the motion and that counsel have been unable to reach such an agreement…." LBR 7026-2(a) *emphasis added*. See also Fed. R. Civ. P. 26(c)(1) and Fed. R. Bank. P. 7026(c)(1) in accord.

8. The Baum Firm did not file this *required* affidavit because they could not. They never attempted to discuss their objections with our office. Instead, in direct contravention of several layers of procedural discovery rules, it simply filed this motion.

9. Baum's office never requested a meeting with our office to discuss these discovery issues, it never wrote a pre-motion letter outlining its concerns nor did it even "pick up the telephone" and contact our office prior to filing the instant motion.

10. For this reason alone, this Court should deny BAC's motion. However, even if the Court proceeds to the merits, the non-destructive forensic testing of these original documents should be permitted in light of the very real questions regarding authenticity that were

present at the beginning of this contested matter and which have been aggravated by the post-petition handling of these documents.

11. On September 27, 2010, BAC filed a proof of claim with this court attaching a copy of the note and mortgage, both of which were dated September 9, 2004.  <u>See attached as Exhibit 1 a true and correct copy of the Note that was filed with the Proof of Claim on or about September 27, 2010  ("September Note") and as Exhibit 2 a true and correct copy of the Mortgage that was filed with the Proof of Claim on or about  September 27, 2010 ("Mortgage".)</u>

12. The September Note had a single indorsement on the third page with the apparent signature of "Michelle Muzzi-Treasurer." <u>See Exhibit 1, pg 3.</u>

13. The September Note had no additional printing or words on the horizontal line immediately below the printed words: "Pay to the Order of."   <u>See Exhibit 1, pg 3.</u>

14. On or about February 9, 2011, *after the debtor had filed the instant objection,* a second version of the Note was filed with this Court by the Baum Firm on behalf of BAC and that copy of the Note is substantially different from the September Note.  <u>See attached as Exhibit 3 a true and correct copy of the Note that was filed with the Court on February 9, 2011 ("February Note.")</u>

15. First, the February Note has four pages in contrast to the September Note which only included three pages.

16. Second, the endorsement by Michelle Muzzi that was originally blank in the September Note has now been altered in the February Note to include the handwritten words: "Countrywide Document Custody Services, a division of Treasury Bank, N.A." <u>Compare Exhibit 1 with 3.</u>

17. Third, there is a second endorsement on the February Note that did not appear on the September Note by "Laurie Meder," "Vice President" that allegedly runs to "Countrywide Home Loans, Inc." without recourse.

18. Fourth, there is a third endorsement on the February Note that did not appear on the September Note, this one by "David A. Specter," "Managing Director," "Countrywide Home Loans, Inc." in blank and without recourse.

19. A comparison of the two different September and February Notes leads to one of two possible conclusions, both of which merit forensic testing to determine authenticity.

20. The first scenario is that there are two competing original notes that lead to different results as to who is the holder and owner of the note.

21. If there are two competing original notes, the need to perform forensic tests to determine authenticity is almost academic. Not only is it vital to determine which of the notes is in fact authentic, but it is equally important to identify the fake "original" note.

22. The only way to accomplish this is to perform non-destructive forensic tests of authenticity as the debtor now proposes.

23. The second possible scenario is that there is only one original note, but it has been altered at some point between the time that it was attached to the proof of claim (September 2010) and when the Baum Firm filed a second version on or about February 9, 2011 ( aka February Note.)

24. As in the first scenario, the necessity to perform forensic tests if there have been alterations between September 2010 and February 2011 is beyond question and debate for two reasons.

25. First adding additional endorsements during the bankruptcy stay implicates whether or not BAC has violated 11 U.S.C §362(a)(4) which states in pertinent part: "a petition...acts as a stay, applicable to all entities, of...any act to create, perfect, or enforce any lien against property of the estate..."

26. If these endorsements were done during the bankruptcy stay a valid question remains as to whether they were effective absent a Motion to Lift Stay or perhaps prior consent by the Trustee and on notice to both the debtor and the other creditors in the case.

27. The only way to answer this question is via the forensic testing proposed by the debtor.

28. Second, and most importantly, the additional endorsements that have been added to the February Note appear to all be by purported "Countrywide" employees. The change to Muzzi's endorsement includes the handwritten verbiage: "Countrywide Document Custody Services, a division of Treasury Bank, N.A."  Similarly the other two new endorsements on the February Note appear to be two employees of Countrywide Home Loans, Inc., Laurie Meder, Vice President, and David A. Specter, Managing Director.

29. If forensic date testing of these endorsements indicates that any of these were added to the original note sometime between September 2010 and February 2011, by ANY employee of Countrywide and its various subsidiaries, significant questions of authenticity are raised because this court can take judicial notice of the fact that Countrywide ceased to exist on or about 2008.

30. Accordingly, assuming that there is one original note, and given the obvious changes that occurred to it between September 2010 and February 2011, handwriting analysis that authenticate each endorsement along with forensic testing and analysis of when the

endorsements occurred is directly relevant to whether in fact BAC has standing and is in fact the real party in interest to file the instant proof of claim.

31. To determine the authenticity of the original note and the endorsements on it, along with when these endorsements occurred, Szumowski has retained the services of the forensic chemist expert, Gerald M. LaPorte, M.S.F.S, of Riley, Welch, LaPorte and Associates ("LaPorte").

32. LaPorte, and his firm, Riley, Welch, LaPorte and Associates have extensive experience in authenticating originals and the signatures and endorsements that are included on the document.

33. In addition, as an ink chemist, LaPorte is the ideal expert to perform non-destructive tests that will determine when the endorsements and/or signatures on the original note were in fact applied to the document.

34. In other words, LaPorte will not only be able to determine if there are two proposed originals, and which is in fact the original, but he will also be able to verify the authenticity of the endorsements and/or signatures along with providing with a reasonable degree of certainty a date as to when these endorsements and/or signatures occurred.   Answering each of these questions is essential to determining whether in fact BAC has standing to file the instant proof of claim.

35. Finally, the debtor also seeks to authenticate the signature of Carolin Hoff who on January 4, 2011, allegedly submitted an affidavit in support of BAC's assertion that it had standing to file the instant proof of claim based on her review of the "business records." <u>See attached hereto as Exhibit 4 a true and correct copy of Affidavit of Carolin Hoff dated January 4, 2011.</u>

36. The main reason that the debtor seeks access to the original Hoff affidavit for authentication purposes is to determine what weight should properly be given to this document.

37. The reason this is a critical question that can only be answered through forensic authentication is because the Baum firm recently revealed, only weeks after filing Hoff's affidavit, that she was no longer employed by BAC and presumably unavailable to be deposed!

38. Accordingly, in light of Hoff's sudden disappearance the debtor may not be able to cross-examine her about critical issues, such as what note did she rely on to reach her conclusions?  Did she rely on the September Note?  Did she rely on the February Note?[1]

39. Obviously, a forensic examination of the original Hoff Affidavit will not answer all relevant questions, but in light of her probable unavailability, it is the only suitable alternative since it will at least provide this Court with some assurance as to the authenticity of this document and thus how much weight to give to this crucial affidavit.

40. In sum, because the Baum Firm failed to comply with Local Rule 7026-2(a) this Court should deny the instant motion for protective order.  However even if this Court chooses to ignore BAC and its law firm's complete disregard of this rule, the non-destructive forensic testing of these documents should go forward because it has been shown to be relevant to the issue of whether BAC has standing to file the instant proof of claim.

WHEREFORE, for all the foregoing reasons the debtor respectfully request that this Court deny the instant motion for protective order.

---

1. Needless to say, the answers to these questions would lead to other questions about the authenticity and validity of these documents and how they were handled.

Dated: May 19, 2011

                                            */s/Ronald J. Kim/s/*_____
                                            Ronald J. Kim