UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

In re,

JOHN C. SZUMOWSKI,

      Debtor.

**DECLARATION IN
SUPPORT OF MOTION
TO QUASH SUBPOENA**
Case No. 10-12431
(Chapter 13)

-----------------------------------------------------------

STATE OF NEW YORK  )
COUNTY OF ERIE      ) SS.:
CITY OF BUFFALO    )

**RECEIVED & FILED**

OCT 0 3 2011

OFFICE OF THE BANKRUPTCY CLERK
ALBANY, NY

      VINCENT E. DOYLE III, ESQ., an attorney duly admitted to practice

before the United States Bankruptcy Court for the Northern District of New York in

this matter, declares under penalty of perjury pursuant to 28 U.S.C. § 1746:

      1.     I am an attorney at law duly licensed to practice my profession in the

State of New York and am a partner in the law firm of CONNORS & VILARDO,

LLP, attorney for non-party, Law Offices of Steven J. Baum, P.C. ("the Baum firm"),

in the above-captioned matter; as such, I am familiar with the facts and

circumstances of this motion.

      2.     I was admitted Pro Hac Vice in this matter by an Order of this Court,

granted January 11, 2011.

      3.     I offer this affidavit in support of the motion for an Order of this Court

quashing the debtor's subpoena directed to non-party, Elpiniki Bechakas, an

attorney employed by the Baum firm.

      4.     On September 6, 2011, counsel for the debtor served a subpoena to

take the deposition of non-party, Elpiniki Bechakas, Esq., an attorney employed by

the Baum firm.  The subpoena also requests Ms. Bechakas to produce several

documents.  *See Exhibit A.*

     5.     In a good faith effort to resolve this dispute without motion practice,

*see* Local Rule 7026-2, attorneys from my office spoke with counsel for Debtor on

two occasions, including Friday, September 23, 2011.  Because counsel for the

Debtor could not agree to withdraw the subpoena, and for the reasons explained

below we could not consent to the requested deposition, it is necessary for the Court

to resolve the issues raised in this motion.

     6.     Briefly, the subpoena should be quash for several reasons, including

that the subpoena is overly broad and seeks testimony that is wholly irrelevant to

the pending bankruptcy matter.  *See* Fed. Rules Civ. Pro. rules 26(b)(1);

45(c)(3)(A)(iv).  Additionally, because the debtor seeks to depose Ms. Bechakas with

respect to an assignment of mortgage she executed on behalf of a client, the subject

of the deposition and documents requested also implicate attorney-client

communications that are privileged.  *See* Fed. Rules Civ. Pro. rule 45(c)(3)(A)(iii)

(the issuing court <u>must</u> quash or modify a subpoena that requires disclosure of

privileged or other protected matter).

## BACKGROUND

7.      Upon information and belief, on September 9, 2004, the Debtor John Szumowski and non-debtor Catherine Szumowski executed a Note and Mortgage in the amount of $125,000.00 secured by property located at 2484 Ridge Road, Scotia, New York.  The Note was executed by the Debtor and non-debtor to Home Funding Finders, Inc., and the Mortgage was executed by the Debtor and non-debtor to Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Home Funding Finders, Inc.  Home Funding Finders, Inc. brokered the mortgage on behalf of Countrywide Home Loans, Inc. ("Countrywide") and upon closing Countrywide became the holder of the Note.  A copy of the Note and Mortgage are attached hereto as *Exhibit B.*

8.      Upon information and belief, the Assignment of Mortgage was executed from MERS as nominee for Home Funding Finders, Inc. to Countrywide on June 30, 2008 and recorded in the Office of the County Clerk for the County of Schenectady on July 15, 2008.  A copy of the Assignment is attached hereto as *Exhibit C.*

9.      Ms. Bechakas is an attorney at the Baum firm and also is an agent of MERS with limited authority to act in regard to loans and mortgages involving MERS members pursuant to agreements among MERSCORP, MERS, and its members.  Acting on her limited authority, Ms. Bechakas, on behalf of MERS, assigned MERS' interest in the mortgage.

10.     Specifically, the Assignment of Mortgage was executed by Ms. Bechakas as Assistant Secretary and Vice President of MERS pursuant to an

Agreement for Signing Authority and Corporate Resolution that are attached hereto as *Exhibit D*. There is no dispute between the assignor MERS and any party to the assignment as to the meaning and effectiveness of the assignment. For his part, the Debtor, who is the borrower, has no interest in or privity with the Assignment of Mortgage between MERS (assignor) and/or Countrywide (assignee).

11.    It appears from the subpoena and documents requested therein that the deposition of Ms. Bechakas would address the authority granted to her by MERS to execute the assignment of the Debtor's mortgage from MERS. *See Exhibit A.*

12.    Upon information and belief, the MERS System was created in 1993 by several large participants in the real estate mortgage industry to track ownership interests in residential mortgages. *See MERSCORP, Inc. v. Romaine*, 8 N.Y.3d 90, 96, 828 N.Y.S.2d 266, 268 (2006). The Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Mortgage Bankers Association of America and others participated in the creation of MERS. *See id.* at n.2. Members of the MERS System also include entities such as insurance companies, title companies and banks. *See id.* at n.3.

13.    The New York Court of Appeals recognized that "[m]ortgage lenders and other entities, known as MERS members, subscribe to the MERS system and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages. Members contractually agree to appoint MERS to act as their common agent on all mortgages they register in the MERS system." *Id.* (emphasis added). In the MERS system, the initial mortgage is recorded in the

County Clerk's office, and MERS is named as the lender's nominee or mortgagee of record. The beneficial ownership interest or servicing rights may then be transferred among MERS members without the necessity of recording these transfers in the Clerk's office. Rather, such assignments are tracked electronically in the MERS system. *See id.*

14.    Upon information and belief, the MERS system tracks mortgages through an 18-digit identification number called the Mortgage Identification Number ("MIN"), which can be found on the first page of the security instrument that is recorded in the land records (when MERS is the original mortgagee) and is assigned to the mortgage loan at origination. MERS is not a document repository for servicers and lenders, and information about a borrower's payment history and status, loan modification, or foreclosure activity is maintained in the servicer's loan file -- not with MERS. When a lender transfers its beneficial interest in the promissory note, MERS retains its fiduciary obligations to the lender, its successors and assigns. MERS continues to act as the mortgagee for the new note holder because the security instrument follows the note. In other words, the promissory note is enforceable against the property because of the mortgage, but the mortgage itself is not independently enforceable as a debt. This principle is not changed when MERS is the mortgagee or beneficiary because of the agency relationship between MERS and the lender. The MERS organization authorizes MERS to act on behalf of the lender as the legal titleholder under the mortgage and exercise any of the rights granted to the lender.

15.    In New York, when a loan is in default and the property is subject to foreclosure, it is common for the Mortgage to be assigned by MERS to the MERS member that is foreclosing on the property.

16.    Additionally, the Committee on Professional Ethics for the New York State Bar Association issued an opinion in which it determined that there is no conflict of interest for an attorney to represent a beneficial owner while concurrently serving as an officer of the mortgagee of record. *See Exhibit F.*

17.    Here, upon information and belief, the Debtor defaulted under the terms of the Note and Mortgage, and Countywide commenced a foreclosure action by filing a Summons and Complaint in the Office of the County Clerk for the County of Schenectady on July 2, 2008.

## THE SUBPOENA SHOULD BE QUASHED.

18.    A review of the subpoena reveals that the Debtor seeks to depose Ms Bechakas regarding this Assignment and the authority given to Ms. Bechakas by MERS to act as its agent and execute transaction documents. *See Exhibit A* at p. 4, Requests 3, 4, 5.

19.    Importantly, this authority is undisputed and completely irrelevant to the instant bankruptcy proceeding.

20.    Because the subpoena is overly broad and seeks testimony that is wholly irrelevant to the pending bankruptcy matter, it should be quashed. *See* Fed. Rules Civ. Pro. rules 26(b)(1); 45(c)(3)(A)(iv); Fed. Rules Bankr. Pro. rules 7026; 9016.

21.    Not only would Ms. Bechakas' testimony be irrelevant, but the requested testimony and documents also implicate attorney-client communications that are privileged, *see Exhibit A* at p. 4, Requests 6, 7, 8, 9, and therefore the subpoena must be quashed pursuant to Fed. Rules Civ. Pro. rule 45(c)(3)(A)(iii) (the issuing court <u>must</u> quash or modify a subpoena that requires disclosure of privileged or other protected matter).

22.    Moreover, the fact that Ms. Bechakas is an attorney with the Baum firm and also executed the Assignment did not present a conflict of interest.

23.    The court in *BAC Home Loans Servicing v. Galan*, Case no. 2010 CA 003149 in Osceola County, Florida, confronted a nearly identical issue and granted a Protective Order precluding the deposition of a non-party attorney for a law firm that performed foreclosure work for creditors. A copy of the protective order from that case is attached as *Exhibit E.*

24.    Additionally, on a motion such as this, the Court must limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(2)(C)(ii). Here, the burdens associated with the requested document production and deposition of a non-party attorney concerning an assignment of mortgage where the subpoena is not limited at all in scope and implicates privileged attorney-client communications are manifest. This is precisely the type of improper disclosure that Fed. Rules Civ. Pro. rule 26(b)(2)(C)(ii) is designed to prohibit.

25.    Alternatively, should the Court deny this motion and allow the Debtor to take the deposition of Ms. Bechakas, the scope of the deposition should be strictly limited to the facts surrounding the execution of the assignment by Ms. Bechakas.

Anything beyond such limited factual questions would impermissibly seek privileged information and/or implicate the attorney-work product doctrine. *See* Fed. Rules Civ. Pro. rules 26(b)(1); 26(b)(3)(A), (B).

26.    In addition to limiting the scope of the deposition, if it is allowed to proceed, the Court should issue a Protective Order prohibiting the deposition from being videotaped and sealing the transcript of the deposition. *See* Fed. Rules Civ. Pro. rule 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense").

27.    For all of the reasons stated above and explained more fully in the accompanying memorandum of law, the Debtor's subpoena directed to Ms. Bechakas should be quashed in its entirety, including the request for documents, and a Protective Order entered prohibiting the Debtor from conducting the requested deposition or obtaining the requested documents.

WHEREFORE, non-party, Law Offices of Steven J. Baum, P.C., requests an order of this Court quashing the Debtor's subpoena seeking the deposition testimony of Elpiniki M. Bechakas, Esq. and requesting documents; or, in the alternative, issuing a protective order strictly limiting the scope of the deposition to the to the facts surrounding the execution of the assignment by Ms. Bechakas, prohibiting the videotaping of the deposition, and sealing the deposition transcript; together with such other relief as this Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 29, 2011.

_____
Vincent E. Doyle III, Esq.

B256 (Form 256 – Subpoena in a Case under the Bankruptcy Code) (12/07)

# UNITED STATES BANKRUPTCY COURT

### Northern District of New York

In re John C. Szumowski    ,
                Debtor

**SUBPOENA IN A CASE UNDER
THE BANKRUPTCY CODE**

Case No. * 10-12431

To: Elpiniki Bechakas

Chapter 13

☐ YOU ARE COMMANDED to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| 300 Pearl Street, Suite 401, Buffalo, New York, 14202 (per Fed. R. Civ. P. 30(b)(3), deposition shall be videotaped.) | 9:30 AM, October 20, 2011 |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):
SEE ATTACHED EXHIBIT "A"

| PLACE | DATE AND TIME |
|---|---|
| | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this proceeding that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Rule 30(b)(6), Federal Rules of Civil Procedure, made applicable in bankruptcy cases and proceedings by Rules 1018, 7030, and 9014, Federal Rules of Bankruptcy Procedure.

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| | 9/6/11 |

ISSUING OFFICER'S NAME, ADDRESS, AND PHONE NUMBER
Ronald J. Kim, Esq., Attorney for Debtor, 36 Long Alley, Suite 101, Saratoga Springs, NY 12866 518-581-8416

* If the bankruptcy case is pending in a district other than the district in which the subpoena is issued, state the district under the case number.

B256 (Form 256 - Subpoena in a Case under the Bankruptcy Code) (12/07)

## PROOF OF SERVICE

| SERVED | DATE 09/06/2011 | PLACE 1000 Liberty Building, 424 Main Street, Buffalo, NY 14202 |
|---|---|---|

| SERVED ON (PRINT NAME) Vincent E. Doyle, Esq. | MANNER OF SERVICE U.S. Mail |
|---|---|

| SERVED BY (PRINT NAME) Ronald J. Kim, Esq. | TITLE Debtor's Attorney |
|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on ___09/06/2011___  
 DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2007, made applicable in cases under the Bankruptcy Code by Rule 9016, Federal Rules of Bankruptcy Procedure:

(c) Protecting a Person Subject to a Subpoena.
(1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.
(2) Command to Produce Materials or Permit Inspection.
(A) Appearance Not Required. A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
(B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.
(3) Quashing or Modifying a Subpoena.
(A) When Required. On timely motion, the issuing court must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person — except that, subject to Rule 45(c)(3)(B)(iii), the person may be commanded to attend a trial by traveling from any such place within the state where the trial is held;
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
(B) When Permitted. To protect a person subject to or affected by a subpoena, the issuing court may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information;
(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party; or
(iii) a person who is neither a party nor a party's officer to incur substantial expense to travel more than 100 miles to attend trial.
(C) Specifying Conditions as an Alternative. In the circumstances described in Rule 45(c)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

(d) Duties in Responding to a Subpoena.
(1) Producing Documents or Electronically Stored Information. These procedures apply to producing documents or electronically stored information:
(A) Documents. A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
(B) Form for Producing Electronically Stored Information Not Specified. If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
(C) Electronically Stored Information Produced in Only One Form. The person responding need not produce the same electronically stored information in more than one form.
(D) Inaccessible Electronically Stored Information. The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
(2) Claiming Privilege or Protection.
(A) Information Withheld. A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
(B) Information Produced. If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

(e) Contempt.
The issuing court may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena. A nonparty's failure to obey must be excused if the subpoena purports to require the nonparty to attend or produce at a place outside the limits of Rule 45(c)(3)(A)(ii).

**EXHIBIT A**

**DEFINITIONS AND INSTRUCTIONS**

A.  "You," "Yours," shall mean Elpiniki Bechakas.

B.  "Debtor" or "Szumowski" means John C. Szumowski.

C.  "BAC" means BAC Home Loan Servicing, LP, its officers, directors, employees, servants, agents, representatives, divisions, partners, corporate parent, subsidiaries, successors in interest, assignees or affiliates and anyone else acting on its behalf.

D.  "HFF" means Home Funding Finders, Inc., its officers, directors, employees, servants, agents, representatives, divisions, partners, corporate parent, subsidiaries, successors in interest, assignees or affiliates and anyone else acting on its behalf.

E.  "Countrywide" means Countrywide Home Loans, Inc. its officers, directors, employees, servants, agents, representatives, divisions, partners, corporate parent, subsidiaries, successors in interest, assignees or affiliates and anyone else acting on its behalf.

F.  "MERS" means Mortgage Electronic Registration Systems, Inc., its officers, directors, employees, servants, agents, representatives, divisions, partners, corporate parent, subsidiaries, successors in interest, assignees or affiliates and anyone else acting on its behalf.

G.  "Note" means the promissory note in the amount of $125,000, dated September 9, 2004, and allegedly executed by the debtor.

H.  "Mortgage" means the mortgage alleged to have been executed by the debtor on or about September 9, 2004, and allegedly securing real property located at 1074 Webster Street, Schenectady, New York.

I.  "MERS" means Mortgage Electronic Registration Systems, Inc., its officers, directors, employees, servants, agents, representatives, divisions, partners, corporate parent, subsidiaries, successors in interest, assignees or affiliates and anyone else acting on its behalf.

J.  The term "person" shall include a natural person, partnership, corporation, joint venture, association, or other group however organized.

K.  The term "during the relevant time period" means the period from June 30, 2007, to the date of this document.

L.  The word "Document" is used in the broadest possible sense and means, without limitation, any written, printed, typed, digitized, Photostatted, photographic, computerized, recorded, or otherwise reproduced communication or representation, whether comprised of letters, words, numbers, pictures, sounds or symbols, or any combination thereof.   It includes the original and any nonidentical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise, and includes every document that is or has been in your possession, control, or custody, or of which you have knowledge of its existence, whether it be originals or copies.   It includes but is not limited to contracts, notes, memoranda,

**EXHIBIT A**

correspondence, diaries, desk or other calendars, statistics, letters, telegrams, minutes, business records, personal records, account statements, reports, studies, checks, receipts, bills, returns, charts, summaries, pamphlets, books, notations of any sort of conversations, written agreements, bulletins, printed matter, computer printouts, electronic mail, data compilations from which information can be obtained, teletypes, telefax, worksheets, logs, forms, bank statements, books of account, ledgers, or invoices, all drafts, alterations, modifications, changes and amendments of any of the foregoing, graphic or oral records or representations of any kind, including but not limited to tapes, cassettes, discs, recordings, computer memories, and other information that is recorded electronically, digitally, or by similar means.

M.    A request to identify" a document is a request to state:

    a.    The date of such document;

    b.    The type of document or written communication;

    c.    The names and present addresses of the person or persons who prepared such document and of the signers, addressors and addressees of such document;

    d.    The name of any principal whom or which the signers, addressors and preparers of such document were thereby representing;

    e.    The present location of such document;

    f.    The name and present address of the person now having custody of the document;

    g.    Whether you possess or control the original or a copy thereof and if so, the location and name of the custodian of such original or copy; and

    h.    A brief description of the contents of such document.

N.    A request to "identify" any oral or written statement or oral or written communication is a request to state:

    a.    The name and present address of each individual making such statement or communication;

    b.    The name of any principal or employer whom or which such individual was thereby representing and the position in which such individual was then employed or engaged by such principal or employee;

    c.    The name and present address of the individual or individuals to whom the oral statement or communication was made, and the name of any principal or employer whom such person or persons were representing at the time of and in connection with such oral statement or communication, as well as the employment position in which they were then employed or engaged;

    d.    The names and present addresses of any other individuals present when such oral statement or communication was made or who heard or acknowledged hearing the same;

    e.    The place where such oral statement of communication was made;

Page 2 of 5

**EXHIBIT A**

f.    A brief description of the contents of such oral statement or communications.

O.    A request to "cite" portions or provisions of any document is a request to state, as applicable with reference to such portion or provision, the title, date, division, page, sheet, and such other information as may be necessary to accurately locate the portion or provision referenced.

P.    The term "communication" shall mean the transmittal of information.

Q.    The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

R.    The phrase "relating or referring to" means containing, identifying, monitoring, evidencing, commenting on, responding to, showing, constituting, reflecting, describing, relating to, or referring to, as these terms are understood in the broadest sense.

S.    The singular and masculine form of any noun or pronoun shall embrace, and be read and applied as embracing, the plural, the feminine, and the neuter, except where circumstances clearly make it inappropriate.

T.    In the event that you withhold any document on the basis of any claim of privilege, state in writing with respect to each document withheld: (1) the name and position of each author of the document, (2) the name and position of each recipient of the document or copies thereof, (3) the date of the document, (4) the subject matter of the document, and (5) the grounds for the claim of privilege.

U.    Documents produced shall be produced either: (1) in the manner and file in which they are currently being maintained or (2) in separate files organized in accordance with this document request to reflect documents responsive to each request.

V.    With respect to each document requested that has been lost, destroyed or otherwise disposed of since its preparation or receipt, provide the following information separately as to each such document: a general description of the subject matter; author(s); recipient(s); date; last custodian of the document or copies thereof; and the full particulars or circumstances whereby the document was lost, destroyed or otherwise disposed of, including the name of the person who directed that the document be destroyed or otherwise disposed of and the date such action was taken.

W.    This demand shall be deemed to continue during the pendency of this action, including the trial thereof.

X.    In the event of failure or refusal to comply, the undersigned shall seek appropriate relief pursuant to Bank. R. Civ. P. 7026 and 7037, including but not limited to preclusion of any withheld evidence, documents or testimony relevant to the subject matter of this action.

Page 3 of 5

# EXHIBIT A

REQUEST 1.      All documents reviewed by you in preparing for this deposition.

REQUEST 2.      All documents identified, described, referring or relating to your

employment with Mortgage Electronic Registration Systems, Inc.

("MERS.")

REQUEST 3.      All documents identified, described, referring or relating to your

authorization to execute an assignment of mortgage on behalf of MERS as

nominee for Home Funding Finders, Inc., during the relevant time period.

REQUEST 4.      Any and all documents which reflect or set forth your job duties and

responsibilities as an Assistant Secretary and Vice President of MERS as

nominee for Home Funding Finders, Inc. during the relevant time period.

REQUEST 5.      Any and all documents which support or evidence compensation paid to

you as an Assistant Secretary and Vice President of MERS as nominee for

Home Funding Finders, Inc. during the relevant time period.

REQUEST 6.      Any and all documents, computer data, regardless of the medium, and

including all digital and physical back-ups that mention, describe, discuss,

refer to or concern the debtor and/or note and mortgage.

REQUEST 7.      Any and all e-mail communications, including unsent drafts of e-mail

communications and computer back-up records of e-mail communications,

that mention, describe, discuss, refer to or concern the debtor and/or note

and mortgage.

Page 4 of 5

## EXHIBIT A

REQUEST 8.          The legal opinion that Counsel Vincent Doyle III referenced during the

January 13, 2011, hearing before Judge Littlefield   referring or relating to

an ethics opinion rendered in 2009 to the law firm of Steven J. Baum, P.C.

REQUEST 9.          Any and all documents referring or relating to the legal opinion that

Counsel Vincent Doyle III referenced during the January 13, 2011, hearing

before Judge Littlefield.

# NOTE

SZUMOWS-241695R

| September 9, 2004 | Latham | New York |
|---|---|---|
| [Date] | [City] | [State] |

2484 RIDGE ROAD                ,SCOTIA,NY 12302
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 125,000.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is Home Funding Finders Inc., The State of New York

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      6.1250      %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the      1st      day of each month beginning on      November 1, 2004     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on      October 1, 2034     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at      12 Century Hill Dr, Latham NY 12110

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 759.51

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

SZUMOWS-241695R                     241695R                                             0

**NEW YORK FIXED RATE NOTE-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N(NY) (0005)          Form 3233 1/01
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3          MW 05/00          Initials: _____

610  077895262  N  001  001

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        2.0000        % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to keep all of these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

SZUMOWS-241695R                                241695R                                          0



**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
JOHN SZUMOWSKI                   -Borrower      CATHERINE SZUMOWSKI              -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower


_____ (Seal)        _____ (Seal)
                                 -Borrower                                      -Borrower

*[Sign Original Only]*

SZUMOWS-241695R                   241695R                              0

-6N(NY) (0005)                    Page 3 of 3                          Form 3233 1/01

Without Recourse
Pay To The Order Of
Countrywide Document Custody Services, a division of Treasury Bank, N.A.
Home Funding Finders, Inc.
By: _____
Michelle Muzzi – Treasurer

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS INC.

WITHOUT RECOURSE

COUNTRYWIDE DOCUMENT CUSTODY SERVICES,
A DIVISION OF TREASURY BANK, NA

BY _____
LAURIE MEDER
VICE PRESIDENT

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

C/W 778952 62

*Schenectady County Endorsement Page*
SZUMOWSKI- 241695 R

**JOHN J. WOODWARD**
Schenectady County Clerk
620 State Street
Schenectady, NY 12305



Document Type   MORTGAGE

From Party   JOHN SZUMOWSKI & CATHERINE SZUMOWSKI

To Party   HOME FUNDING FINDERS INC.

RETURN TO   HOME FUNDING FINDERS, INC.

12 CENTURY HILL DRIVE

LATHAM, NEW YORK 12110

```
           RECORDED
    11/22/2004 9:53:22 AM
         County Clerk
        JOHN J. WOODWARD
    SCHENECTADY COUNTY, NY

Book/Page: MORT/3423/596
      Total Pages: 19

Receipt No:      303485
Doc No:          CV7282
Inst Num:        200451967

NY LAND SUR         $4.75
NY LAND COMP SUR   $14.25
CO GENERAL REVENUE $62.00
CO LAND SUR         $0.25
CO LAND COMP SUR    $0.75
COTA MORTGAGE TAX $287.50
SPECIAL ADDITIONAL $312.50
TAX
BASIC TAX -        $625.00
GLENVILLE
   TOTAL        $1,307.00
INV: 303485 USER: ENG
```



610   077895262  D2  001   001

```
    Recording Tax Receipt
           Date NOV 22, 2004
   I do hereby certify that I have received
   on this Mortgage #CV7282 at recording
   Basic Tax        $   625.00
   Additional Tax   $   287.50
   Special Addl Tax $   312.50
       Total $       1225.00
   Recording Officer of SCHENECTADY COUNTY, NY
```

Important: This endorsement page constitutes the Clerk's endorsement
in accordance with Local Law #7 of 1996–DO NOT DETACH–Upon
recording, this page becomes part of the document.

Return To:

Home Funding Finders, Inc.
12 Century Hill Drive
Latham, NY  12110

MORT Book **3423** Page **597**
Doc No CV7282

Prepared By:

C/W
77895262

———————————— [Space Above This Line For Recording Data] ————————————

# MORTGAGE MIN 1002190-0000011433-5

**WORDS USED OFTEN IN THIS DOCUMENT**
(A) "Security Instrument." This document, which is dated          September 9, 2004
together with all Riders to this document, will be called the "Security Instrument."
(B) "Borrower."

JOHN SZUMOWSKI and CATHERINE SZUMOWSKI

whose address is
1074 WEBSTER STREET, SCHENECTADY, NY 12303
sometimes will be called "Borrower" and sometimes simply "I" or "me."
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is
acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint,
MI 48501-2026, tel. (888) 679-MERS. **FOR PURPOSES OF RECORDING THIS MORTGAGE,
MERS IS THE MORTGAGEE OF RECORD.**
(D) "Lender."  Home Funding Finders Inc., The State of New York

will be called "Lender." Lender is a corporation or association which exists under the laws of
The State of New York                . Lender's address is  12 Century Hill Drive,
Latham, NY 12110                          .

SZUMOWS-241695R              241695R                                      0

NEW YORK - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS          Form 3033 1/01

-6A(NY) (0005).02
Page 1 of 17   MW 05/02.02    Initials: JS CS
VMP MORTGAGE FORMS - (800)521-7291

(E) "Note." The note signed by Borrower and dated     September 9, 2004     , will be called
the "Note." The Note shows that I owe Lender
One Hundred Twenty Five Thousand and no/100
                              Dollars (U.S. $   125,000.00                    )
plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments
and to pay the debt in full by October 1, 2034                     .

(F) "Property." The property that is described below in the section titled "Description of the Property,"
will be called the "Property."

(G) "Loan." The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and
late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of
Rights in the Property" sometimes will be called the "Sums Secured."

(I) "Riders." All Riders attached to this Security Instrument that are signed by Borrower will be called
"Riders." The following Riders are to be signed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J) "Applicable Law." All controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable, judicial opinions will be called "Applicable Law."

(K) "Community Association Dues, Fees, and Assessments." All dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization will be called "Community Association Dues, Fees, and Assessments."

(L) "Electronic Funds Transfer." "Electronic Funds Transfer" means any transfer of money, other than
by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers
(where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM)
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items." Those items that are described in Section 3 will be called "Escrow Items."

(N) "Miscellaneous Proceeds." "Miscellaneous Proceeds" means any compensation, settlement, award of
damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under
the coverage described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid
Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the
Property. A taking of the Property by any governmental authority by eminent domain is known as
"Condemnation."

(O) "Mortgage Insurance." "Mortgage Insurance" means insurance protecting Lender against the
nonpayment of, or default on, the Loan.

(P) "Periodic Payment." The regularly scheduled amount due for (i) principal and interest under the Note,
and (ii) any amounts under Section 3 will be called "Periodic Payment."

(Q) "RESPA." "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same subject
matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are
imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally
related mortgage loan" under RESPA.

241695R                                                                        0

-6A(NY) (0005).02                    Page 2 of 17                     Form 3033 1/01

MORT Book 3423 Page 598
Doc No CV7282

**BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY**

I mortgage, grant and convey the Property to MERS (solely as nominee for Lender and Lender's successors in interest) and its successors in interest subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

I understand and agree that MERS holds only legal title to the rights granted by me in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:

(A) to exercise any or all of those rights, including, but not limited to, the right to foreclose and sell the Property; and

(B) to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

**DESCRIPTION OF THE PROPERTY**

I give MERS (solely as nominee for Lender and Lender's successors in interest) rights in the Property described in (A) through (G) below:

(A) The Property which is located at        2484 RIDGE ROAD                          [Street]

SCOTIA                                 [City, Town or Village], New York 12302      [Zip Code].

This Property is in Schenectady                              County. It has the following legal description:

THIS REAL PROPERTY IS IMPROVED BY A ONE OR TWO FAMILY DWELLING.
REQUEST FOR EXEMPTION IS MADE PURSUANT TO §253 OF THE TAX LAW.

MORT Book 3423 Page 599
Doc No CV7282

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section. These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

SZUMOWS-241695R                   241695R                Initials: JS CS          0

-6A(NY) (0006).02                  Page 3 of 17                              Form 3033 1/01

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

Next, to pay the amounts due Lender under Section 3 of this Security Instrument.

Such payments will be applied to each Periodic Payment in the order in which it became due.

Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

SZUMOWS-241695R                    241695R                                        0

Initials: _15 CS_

6A(NY) (0006).02                    Page 4 of 17                        Form 3033 1/01

MORT Book 3423 Page 600
Doc No CV7282

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.**

I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

SZUMOWS-241695R                    241695R                                                      0

-6A(NY) (0005).02                Page 6 of 17                        Initials: ___                Form 3033 1/01

MORT Book 3423 Page 601
Doc No CV7282

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations.

Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) Adjustments to the Escrow Funds.

Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

4. Borrower's Obligation to Pay Charges, Assessments And Claims. I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security

SZUMOWS-241695R            241695R                                           0

Initials: JSCS

-6A(NY) (0009).02            Page 6 of 17                          Form 3033 1/01

MORT Book 3423 Page 602
Doc No CV7282

Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period

SZUMOWS-241695R          241695R

-6A(NY) (0005).02          Page 7 of 17          Initials: JS CS          Form 3033 1/01

MORT Book 3423 Page 603
Doc No CV7282

that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.**

I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.**

Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

SZUMOWS-241695R                    241695R                    Initials: JS CS                    0

6A(NY) (0009).02                    Page 8 of 17                    Form 3033 1/01

MORT Book **3423** Page **604**
Doc No **CV7282**

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance

coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has - if any - regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11. **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in

SZUMOWS-241695R                         241695R

8

-6A(NY) (0008).02                    Page 10 of 17                    Form 3033 1/01

MORT Book 3423 Page 606
Doc No CV7282

value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

12. **Continuation of Borrower's Obligations And of Lender's Rights.**

(a) Borrower's Obligations.

Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) Lender's Rights.

Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

13. **Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to

SZUMOWS-241695R                241695R                                            0

Initials: JS OS

-6A(NY) (0005).02                    Page 11 of 17                                Form 3033 1/01

MORT Book 3423 Page 607
Doc No CV7282

delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission.

SZUMOWS-241695R              241695R                  Initials: _____              0

-6A(NY) (0005).02          Page 12 of 17          Form 3033 1/01

MORT Book 3423 Page 608
Doc No CV7282

If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If

SZUMOWS-241695R                  241695R                                    Initials: _____         8

-6A(NY) (0005).02                        Page 13 of 17                                       Form 3033 1/01

MORT Book 3423 Page 609
Doc No CV7282

Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21. **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22. **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another

SZUMOWS-241695R                         241695R                                                                           0

Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1) The promise or agreement that I failed to keep or the default that has occurred;

(2) The action that I must take to correct that default;

(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

23. Lender's Obligation to Discharge this Security Instrument. When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24. Agreements about New York Lien Law. I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25. Borrower's Statement Regarding the Property [check box as applicable].

☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

MORT Book 3423 Page 611
Doc No CV7282

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 17 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____    _____ (Seal)
                             JOHN SZUMOWSKI              -Borrower

_____    _____ (Seal)
                             CATHERINE SZUMOWSKI         -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                           -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                           -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                           -Borrower

MORT Book 3423 Page 612
Doc No CV7282

SZUMOWS-241695R              241695R                          0

-6A(NY) (0008).02           Page 16 of 17           Form 3033 1/01

STATE OF NEW YORK,                                          County ss:

On the ___ day of _____, ____ before me, the undersigned, a notary
public in and for said state, personally appeared JOHN SZUMOWSKI and CATHERINE SZUMOWSKI

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the
same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the
individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

Notary Public

JAMES P. PROVOST
Notary Public, State of New York
Qualified in Schenectady County
No. 6CG8041
Commission Expires February 8, 19__

Tax Map Information:

MORT Book 3423 Page 613
Doc No CV7282

SZUMOWS-241695R              241695R                    Initials: ___ ___           0

-6A(NY) (0008).02              Page 17 of 17                              Form 3033 1/01

## SCHEDULE " A"

**ALL THAT TRACT OR PARCEL OF LAND**, situate in the Town of Glenville, County of Schenectady, New York, bounded and described as follows:

Beginning at an iron pipe on the easterly side of Ridge Road, said iron pipe being the northwest corner of the as described in warranty deed from Earl E. Campbell and Dorothy O. Campbell, his wife, to Earl E. Campbell, made the 7th day of November, 1963 and recorded in the Schenectady County Clerk's Office in Book 843 of Deeds, Page 243, thence running south 83' 00' East, 470.0 feet to an iron pipe found by a stone wall, thence along the stone wall South 1' 37' East 129.94' to an iron pipe set in the stone wall, thence North 83' 00' West, 489.85 feet to an iron pipe set in the Easterly Side of Ridge Road, thence along the easterly side of Ridge Road, North 7' 00' East, 125.0 feet to the point or place of beginning.

MORT Book 3423 Page 614
Doc No CV7282

Said premises are improved by a one or two family residence only.

This is a purchase money mortgage.

Schenectady County Endorsement Page

JOHN J. WOODWARD
Schenectady County Clerk
620 State Street
Schenectady, NY  12305

DOCUMENT TYPE   *Assignment of Mortgage*

FROM PARTY   MERS

FROM PARTY   _____

TO PARTY   *Countrywide Home Loans, Inc*

TO PARTY   _____

RECORDED
07/15/2008 2:27:28 PM
County Clerk
JOHN J. WOODWARD
SCHENECTADY COUNTY, NY

Book/Page: MORT/3952/241
Total Pages: 2
Receipt No:        501639
Doc No:        2008-1059
Inst Num:       200829333

NY LAND SUR            $4.75
NY LAND COMP SUR      $14.25
CO GENERAL REVENUE    $18.50
CO LAND SUR            $0.25
CO LAND COMP SUR       $0.75
   TOTAL PAID         $38.50
INV: 501639 USER: ELM

RETURN TO   BLUE TITLE SERVICES, LLC
30 W. BROAD ST., SUITE 102
OLD CITY HALL / IRVING PLACE
ROCHESTER, NY 14614
716-955-6111

IMPORTANT

This sheet constitutes the Clerk's endorsement in accordance with Local Law #7 of 1996 (Effective
9/1/96). DO NOT DETACH. Upon recording, this page becomes part of the document.

MORT Book 3952 Page 242
Doc No 2008-1059

Loan # 77895262

## *ASSIGNMENT OF MORTGAGE*

County of **SCHENECTADY**, State of New York

Assignor: **Mortgage Electronic Registration Systems, Inc., as nominee for Home Funding Finders, Inc. its successors and assigns, 3300 SW 34th Avenue Suite 101, Ocala, FL 34474**

Assignee: **Countywide Home Loans, Inc., 400 Countrywide Way, Simi Valley, CA 93065**

Original Lender: **Mortgage Electronic Registration Systems, Inc., as nominee for Home Funding Finders, Inc. its successors and assigns**

Mortgage made by JOHN SZUMOWSKI, CATHERINE SZUMOWSKI, dated **the 9th day of September, 2004** in the amount of **One hundred and twenty five thousand dollars ($125,000.00)** and interest, recorded on the **22ⁿᵈ day of November, 2004** in the Office of the Clerk of the County of **SCHENECTADY at Liber 3423 of Mortgages at Page 596.**

This said mortgage has not been otherwise assigned.

Property Address: 2484 RIDGE ROAD, SCOTIA, NY 12302
SBL # 14.1-2-5

Know that All Men By These Present in consideration of the sum of One and No/100th Dollars and other good valuable consideration, paid to the above Named assignor, the receipt and sufficiency of which is hereby acknowledged the Said Assignor hereby assigns unto the above named Assignee the said Mortgage, and the full benefit of all the powers and of all the covenants and Provisions therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor's beneficial interest under the Mortgage.
*TO HAVE AND TO HOLD* the said Mortgage, and also the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.
*THIS* Assignment is not subject to the requirement of Section 275 of the Real Property Law because it is within the secondary mortgage market.
*IN WITNESS WHEREOF*, the Assignor has caused these presents to be signed by its duly authorized officer this 30 day of June, 2008.

*IN PRESENCE OF*

**Mortgage Electronic Registration Systems, Inc., as nominee for Home Funding Finders, Inc. its successors and assigns**

BY: _____
Elpiniki Bechakas
Assistant Secretary and Vice President

State of New York
County of Erie    ss:
On the 30 day of June in the year 2008 before me, the undersigned, a notary public in and for said state, personally appeared Elpiniki Bechakas, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument and that such individual made such appearance before the undersigned in the _____. (Insert city or political subdivision and state or other place acknowledgment taken if acknowledgment is taken outside of New York State)

_____
Notary Public



**JAMIE CANELLA**
**NOTARY PUBLIC, STATE OF NEW YORK**
**REGISTRATION No. 01CA8121112**
**QUALIFIED IN ERIE COUNTY**
**My Commission Expires January 10, 20___**



## AGREEMENT FOR SIGNING AUTHORITY

**MERSCORP, INC.** ("MERS") and its subsidiary, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., COUNTRYWIDE HOME LOANS, INC** ("MEMBER") and **Steven J. Baum, P.C.** ("VENDOR") hereby agree as follows:

1.  The purpose of this agreement for signing authority (the "Agreement") is to define the rights and obligations of the parties when Vendor performs certain duties, as described in the attached corporate resolution (the "Resolution"), relating to mortgage loans that are registered on the MERS® System and shown on the MERS® System to be serviced by Member.

2.  **COUNTRYWIDE HOME LOANS, INC** is a member of MERS, and has signed an agreement of membership that is incorporated herein by reference. Member has entered into a separate contract with Vendor to perform certain services for Member. References herein to "mortgage(s)" and "mortgagee of record" shall include deed(s) of trust and beneficiary under a deed of trust, respectively, and any other form of security instrument under applicable state law.

3.  The parties acknowledge that Mortgage Electronic Registration Systems, Inc. may be the mortgagee of record on Member's mortgages. Therefore, in order for Vendor to perform its contractual duties to Member, MERS, by corporate resolution, will grant employees of Vendor the limited authority to act on behalf of MERS to perform certain duties. Such authority is set forth in the Resolution, which is made a part of this Agreement.

4.  The parties agree that Member will provide all necessary information and instructions to Vendor to perform certain duties where Mortgage Electronic Registration Systems, Inc. acts as the mortgagee of record. All parties agree that Merscorp, Inc. and Mortgage Electronic Registration Systems, Inc. are not responsible for the accuracy of any information provided by Member to Vendor, or any information entered into the MERS® System by or on behalf of Member. Any problems regarding the information or instructions between Member and Vendor must be resolved between those two parties.

5.  Member and Vendor agree to indemnify and hold harmless Merscorp, Inc., Mortgage Electronic Registration Systems, Inc. and any employee, director, officer, agent or affiliate of Merscorp, Inc. or Mortgage Electronic Registration Systems, Inc. ("MERS Party") from and against any and all third-party claims, losses, penalties, fines, forfeitures, reasonable attorney fees and related costs, judgments, and any other costs, fees and expenses that result from the negligence, errors and omissions, breach of confidentiality or willful misconduct of Vendor in performing certain duties where Mortgage Electronic Registration Systems, Inc. is the mortgagee of record.

6.  Vendor shall maintain appropriate insurance coverage that shall include coverage for any negligence, errors and omissions or willful misconduct of all employees authorized to sign as officers of Mortgage Electronic Registration Systems, Inc.

7. Upon termination of the contract between Member and Vendor, this agreement shall concurrently terminate and the corporate resolution shall be revoked at such time.

8. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia without regard to its choice of law provisions.

The parties have executed this Agreement intending to be bound as of the dates indicated below.

**MERSCORP, INC.**

By: _____

Title:  Vice President

Dated:     10-23-07

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: _____

Title:      Secretary/Treasurer

Dated:    10-23-07

**COUNTRYWIDE HOME LOANS, INC**

By: _____

Title:  Brandon Sciumbato - Senior Vice President

Dated:   9.30.07

**Steven J. Baum, P.C.**

By: _____

Title:      Secretary

Dated:    10-4-07

# MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

## CORPORATE RESOLUTION

Be it Resolved that the attached list of candidates are employee(s) of **Steven J. Baum, P.C.** and are hereby appointed as assistant secretaries and vice presidents of Mortgage Electronic Registration Systems, Inc., and as such, are authorized to:

Execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS System that is shown to be registered to the Member, including but not limited to (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits of Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, (g) Affidavits regarding lost promissory notes, and (h) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

Take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member, including but not limited to: (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Member, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

Assign the lien of any mortgage loan registered on the MERS® System that is shown to be registered to **COUNTRYWIDE HOME LOANS, INC** or its designee. Release the lien of any mortgage loan registered on the MERS® System that is shown to be registered to **COUNTRYWIDE HOME LOANS, INC** or its designee.

I, **William C. Hultman**, being the Corporate Secretary of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a true copy of a Resolution duly adopted by the Board of Directors of said corporation effective as of the __23__ day of _october_, 2007 which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.

_____
Secretary

**Steven J. Baum, P.C.**

**Mortgage Electronic Registration Systems, Inc.**
**Certifying Officers**

Nicole Gazzo

Ron Zackem

Darleen Karaszewski

Brian Kumiega

Elpiniki Bechakis

30% PCW    100% Recycled

102096 /4

IN THE CIRCUIT COURT OF THE
9TH JUDICIAL CIRCUIT IN AND FOR
OSCEOLA COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

BAC HOME LOANS SERVICING, LP f/k/a    CASE NO. 2010 CA 003149
COUNTRYWIDE HOME LOANS
SERVICING, LP,

   Plaintiff,

v.

FRANCIS GALAN, MARCOS GALAN,
and MICHELLE F. GALAN, ISPC,

   Defendants.

_____/

## ORDER GRANTING NON-PARTY PATRICIA ARANGO'S MOTION FOR PROTECTIVE ORDER

    **THIS CAUSE** having come to be heard on February 8, 2011 on Non-Party
Patricia Arango's Motion for Protective Order and the Court having heard argument of
counsel, having reviewed the relevant submissions of counsel and being otherwise
advised in the Premises, it is hereupon,

    **ORDERED AND ADJUDGED:**

1.    Non-Party Patricia Arango's Motion for Protective Order is hereby **GRANTED**
    based upon the findings of fact and conclusions of law set forth herein.

2.    This case is a foreclosure action, where Plaintiff sued the Defendants to foreclose
    upon property for which MERS is the mortgagee of record as nominee for
    Gateway Funding Diversified Mortgage Services, LP.

CASE NO. 2010 CA 003149

3.  In that the beneficial ownership in the Note had been transferred to Federal National Mortgage Association (FNMA) and because the Mortgage follows the Note, the Mortgage was assigned to Plaintiff, BAC Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing, LP for purposes of enforcement.

4.  Ms. Arango, acting on behalf of and pursuant to a limited grant of authority from MERS, assigned MERS' interests in the Defendants' mortgage to Plaintiff. There is no dispute between the assignor MERS and any parties to the assignment as to the meaning and effectiveness of the assignment(s).

5.  **Plaintiff is the holder of the note endorsed in blank.**

6.  Defendants noticed Ms. Arango for deposition to inquire into the facts underlying the subject Assignment.

7.  Non-Party Patricia Arango moved for a protective order as to this deposition. Ms. Arango is a managing attorney at the Law Offices of Marshall C. Watson, the law firm that presents Plaintiff in the foreclosure action.

8.  The assignment transferred rights under the mortgage, <u>not under the Note</u>. The promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and as such, it is often bought and sold.

9.  As recently iterated by the Fourth DCA, the "possession of the original note, indorsed in blank, [is] sufficient under Florida's Uniform Commercial Code to establish that it was the lawful holder of the note, entitled to enforce its terms." *Riggs v. Aurora* 36 So. 3d 932, 933 (Fla. 4th DCA 2010) (affirming summary judgment of foreclosure based on Plaintiff being holder of promissory note indorsed in blank); *see also Troupe v. Redner*, 652 So. 2d 394, 395-396 (Fla. 2d DCA 1995) ("To foreclose upon a promissory note, the plaintiff must be the

2

'holder' in order to be the real party in interest (citations omitted.). The 'holder' is the 'person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to the bearer or in the blank.'" (citation omitted)).

10. Moreover, in *Chemical Residential Mortgage v. Rector*, the First District Court of Appeal held that a complaint properly stated a cause of action for foreclose by the holder of the note and mortgage. 742 So.2d 300 (Fla. 1st DCA 1998). Therein, the Court stated that, "[b]ecause the lien follows the debt, there was no requirement of attachment of a written and recorded assignment of the mortgage in order for the [owner and holder of the note] to maintain the foreclosure action." *Id.*

11. In that Plaintiff is the holder of the Note endorsed in blank, Plaintiff is entitled to enforce its terms and any defenses based upon the validity of the Assignment of the mortgage are moot.

12. Courts in Florida and elsewhere have overwhelmingly approved of MERS and its practice of using agents with limited authority to assign MERS' mortgages. *See Taylor v. Deutsche Bank Nat'l Trust Co., et al.*, 2010 WL 3056612, *3 (Fla. 5th DCA August 6, 2010) (affirming summary judgment and holding "that the written assignment of the note and mortgage from MERS to Deutsche Bank properly transferred the note and mortgage to Deutsche Bank."); *Riggs*, 36 So. 3d at 933 (approving execution of transfer documents by agent of original mortgagee and affirming summary judgment of foreclosure); *Bain v. Metropolitan Mortgage Group, Inc.*, 2010 WL 891585, *6 (W.D. Wash. March 11, 2010) (granting summary judgment to bank, approving of MERS' use of an authorized agent to execute assignments and other transfers prior to commencing foreclosure, and finding "[t]here is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions.");

3

CASE NO. 2010 CA 003149

*Countrywide v. Flynn*, 897 N.Y.S.2d 855, 859 (N.Y. Sup. Ct. March 10, 2010) ("[W]here... MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, is successors and assigns, a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment."); *Crum v. LaSalle Bank, N.A.*, 2009 WL 2986655 (Ala. Civ. App. Sept. 18, 2009) (same).

13. Other Courts in Florida have granted Motions for Protective Order filed by The Law Offices of Marshall Watson on similar grounds, including: 1) Judge Richard Conrad in Orange County, *U.S. Bank National Association v. Kelly*, Case No. 2010-CA-004290-0; 2) Judge John Hoy in Palm Beach County, *HSBC Bank USA, N.A. v. Davydova*, Case No. 50-2009-CA-04261 XXXXMB; 3) Judge Jose Rodriguez in Miami-Dade County, *BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP v. Munoz* , Case No. 09-69411 CA 24; and 4) Judge Hugh Starnes in Lee County, *BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP v. Taylor*, Case No. 36-2009-CA-064485.

14. Since the deposition sought by Defendants relates to undisputed facts and pure issues of settled Florida law, and because Plaintiff is the holder of the note endorsed in blank, Ms. Arango has shown good cause why this Court should prevent the Defendant-borrowers from allowing Ms. Arango's deposition to go forward.

**DONE and ORDERED** in Chambers in Osceola County, Florida this _22_

CASE NO. 2010 CA 003149

day of _____ *Feb* _____, 2011.


Jeffords D. Miller
Circuit Court Judge


Copies furnished to:
Philip Allan Kent Stiles, Esquire
Kaufman, Englett & Lynd, PLLC
111 North Magnolia Avenue
Suite 1500
Orlando, FL 32801

Jonathon CA Blevins, Esquire
Kaufman, Englett & Lynd, PLLC
111 North Magnolia Avenue
Suite 1500
Orlando, FL 32801

Dale L. Friedman, Esquire
Conroy, Simberg, Ganon, Krevans, Abel,
Lurvey, Morrow & Schefer, P.A.
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021

David Newman, Esquire
Law Offices of Marshall C. Watson, P.A.
1800 N.W. 49th Street
Suite 120
Ft. Lauderdale, FL 33309

102096 /*/

IN THE CIRCUIT COURT OF THE
9TH JUDICIAL CIRCUIT IN AND FOR
OSCEOLA COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

BAC HOME LOANS SERVICING, LP f/k/a    CASE NO. 2010 CA 003149
COUNTRYWIDE HOME LOANS
SERVICING, LP,

    Plaintiff,

v.

FRANCIS GALAN, MARCOS GALAN,
and MICHELLE F. GALAN, ISPC,

    Defendants.
_____/

## ORDER GRANTING NON-PARTY PATRICIA ARANGO'S MOTION FOR PROTECTIVE ORDER

    **THIS CAUSE** having come to be heard on February 8, 2011 on Non-Party Patricia Arango's Motion for Protective Order and the Court having heard argument of counsel, having reviewed the relevant submissions of counsel and being otherwise advised in the Premises, it is hereupon,

    **ORDERED AND ADJUDGED:**

1.    Non-Party Patricia Arango's Motion for Protective Order is hereby **GRANTED** based upon the findings of fact and conclusions of law set forth herein.

2.    This case is a foreclosure action, where Plaintiff sued the Defendants to foreclose upon property for which MERS is the mortgagee of record as nominee for Gateway Funding Diversified Mortgage Services, LP.

CASE NO. 2010 CA 003149

3. In that the beneficial ownership in the Note had been transferred to Federal National Mortgage Association (FNMA) and because the Mortgage follows the Note, the Mortgage was assigned to Plaintiff, BAC Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing, LP for purposes of enforcement.

4. Ms. Arango, acting on behalf of and pursuant to a limited grant of authority from MERS, assigned MERS' interests in the Defendants' mortgage to Plaintiff. There is no dispute between the assignor MERS and any parties to the assignment as to the meaning and effectiveness of the assignment(s).

5. **Plaintiff is the holder of the note endorsed in blank.**

6. Defendants noticed Ms. Arango for deposition to inquire into the facts underlying the subject Assignment.

7. Non-Party Patricia Arango moved for a protective order as to this deposition. Ms. Arango is a managing attorney at the Law Offices of Marshall C. Watson, the law firm that presents Plaintiff in the foreclosure action.

8. The assignment transferred rights under the mortgage, <u>not under the Note</u>. The promissory note is a negotiable instrument under Article 3 of the Uniform Commercial Code, and as such, it is often bought and sold.

9. As recently iterated by the Fourth DCA, the "possession of the original note, indorsed in blank, [is] sufficient under Florida's Uniform Commercial Code to establish that it was the lawful holder of the note, entitled to enforce its terms." *Riggs v. Aurora* 36 So. 3d 932, 933 (Fla. 4th DCA 2010) (affirming summary judgment of foreclosure based on Plaintiff being holder of promissory note indorsed in blank); *see also Troupe v. Redner*, 652 So. 2d 394, 395-396 (Fla. 2d DCA 1995) ("To foreclose upon a promissory note, the plaintiff must be the

2

'holder' in order to be the real party in interest (citations omitted.). The 'holder' is the 'person who is in possession of a document of title or an instrument or an investment security drawn, issued or endorsed to him or to his order or to the bearer or in the blank.'" (citation omitted)).

10. Moreover, in *Chemical Residential Mortgage v. Rector*, the First District Court of Appeal held that a complaint properly stated a cause of action for foreclose by the holder of the note and mortgage. 742 So.2d 300 (Fla. 1st DCA 1998). Therein, the Court stated that, "[b]ecause the lien follows the debt, there was no requirement of attachment of a written and recorded assignment of the mortgage in order for the [owner and holder of the note] to maintain the foreclosure action." *Id.*

11. In that Plaintiff is the holder of the Note endorsed in blank, Plaintiff is entitled to enforce its terms and any defenses based upon the validity of the Assignment of the mortgage are moot.

12. Courts in Florida and elsewhere have overwhelmingly approved of MERS and its practice of using agents with limited authority to assign MERS' mortgages. *See Taylor v. Deutsche Bank Nat'l Trust Co., et al.,* 2010 WL 3056612, *3 (Fla. 5th DCA August 6, 2010) (affirming summary judgment and holding "that the written assignment of the note and mortgage from MERS to Deutsche Bank properly transferred the note and mortgage to Deutsche Bank."); *Riggs,* 36 So. 3d at 933 (approving execution of transfer documents by agent of original mortgagee and affirming summary judgment of foreclosure); *Bain v. Metropolitan Mortgage Group, Inc.,* 2010 WL 891585, *6 (W.D. Wash. March 11, 2010) (granting summary judgment to bank, approving of MERS' use of an authorized agent to execute assignments and other transfers prior to commencing foreclosure, and finding "[t]here is simply nothing deceptive about using an agent to execute a document, and this practice is commonplace in deed of trust actions.");

CASE NO. 2010 CA 003149

*Countrywide v. Flynn*, 897 N.Y.S.2d 855, 859 (N.Y. Sup. Ct. March 10, 2010) ("[W]here... MERS is identified in the mortgage indenture as the nominee of the lender and as the mortgagee of record and the mortgage indenture confers upon such nominee all of the powers of such lender, is successors and assigns, a written assignment of the note and mortgage by MERS, in its capacity as nominee, confers good title to the assignee and is not defective for lack of an ownership interest in the note at the time of the assignment."); *Crum v. LaSalle Bank, N.A.*, 2009 WL 2986655 (Ala. Civ. App. Sept. 18, 2009) (same).

13.  Other Courts in Florida have granted Motions for Protective Order filed by The Law Offices of Marshall Watson on similar grounds, including: 1) Judge Richard Conrad in Orange County, *U.S. Bank National Association v. Kelly*, Case No. 2010-CA-004290-0; 2) Judge John Hoy in Palm Beach County, *HSBC Bank USA, N.A. v. Davydova*, Case No. 50-2009-CA-04261 XXXXMB; 3) Judge Jose Rodriguez in Miami-Dade County, *BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP v. Munoz*, Case No. 09-69411 CA 24; and 4) Judge Hugh Starnes in Lee County, *BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP v. Taylor*, Case No. 36-2009-CA-064485.

14.  Since the deposition sought by Defendants relates to undisputed facts and pure issues of settled Florida law, and because Plaintiff is the holder of the note endorsed in blank, Ms. Arango has shown good cause why this Court should prevent the Defendant-borrowers from allowing Ms. Arango's deposition to go forward.

**DONE and ORDERED** in Chambers in Osceola County, Florida this _22_

4

CASE NO. 2010 CA 003149

day of _____ _Feb_ _____, 2011.

_Jeffords D. Miller_
Jeffords D. Miller
Circuit Court Judge

Copies furnished to:
Philip Allan Kent Stiles, Esquire
Kaufman, Englett & Lynd, PLLC
111 North Magnolia Avenue
Suite 1500
Orlando, FL 32801

Jonathon CA Blevins, Esquire
Kaufman, Englett & Lynd, PLLC
111 North Magnolia Avenue
Suite 1500
Orlando, FL 32801

Dale L. Friedman, Esquire
Conroy, Simberg, Ganon, Krevans, Abel,
Lurvey, Morrow & Schefer, P.A.
3440 Hollywood Boulevard
Second Floor
Hollywood, FL 33021

David Newman, Esquire
Law Offices of Marshall C. Watson, P.A.
1800 N.W. 49th Street
Suite 120
Ft. Lauderdale, FL 33309

5

# IIIII New York State Bar Association

NYSBA    One Elk Street, Albany, New York 12207 • 518/463-3200 • http://www.nysba.org

## Committee on Professional Ethics

Opinion 847 (12/21/10)

**Topic:**    Conflicts of interest; lawyer's
responsibilities to third parties;
lawyer as corporate officer.

**Digest:**    An attorney may represent the
beneficial owner of a mortgage note
and mortgage, and may
concurrently serve as an officer of
the mortgagee of record, for the
purposes of executing a mortgage
assignment to the beneficial owner
and prosecuting a mortgage
foreclosure action in the assignee's
name.

**Rules:**    1.0(f); 1.7(a); 1.7(b).

## QUESTION

1.         May an attorney represent the beneficial owner of a mortgage note and
mortgage, and concurrently serve as an officer of the mortgagee of record, for the
purposes of executing a mortgage assignment to the beneficial owner and prosecuting
a mortgage foreclosure action in the assignee's name?

## FACTS

2.         In 1993, the real estate mortgage industry created an electronic
registration system for mortgages.  Mortgage Electronic Registration Systems, Inc.
("MERS"), a Delaware corporation, was established to act as nominee and mortgagee
of record for members of the system (the "MERS System").  The purpose of the MERS
System was to facilitate the transfer and assignment of mortgages in the secondary
mortgage market by bypassing, in favor of instant and inexpensive private electronic
registration, the more cumbersome preparation and expensive recording of paper
mortgage assignments in the real property records of the nation's municipal recording
authorities.  In New York, regardless of how many electronic assignments of the

mortgage occurred within the MERS System, MERS would remain the mortgagee of record as reflected by the public records of the county clerks.

3.        In 2006, the New York Court of Appeals upheld the continuing utility of the private MERS System by affirming a writ of mandamus and declaring that the Suffolk County Clerk was statutorily required to record and index mortgages, assignments of mortgage, and discharges of mortgage that named MERS as nominee or mortgagee of record. *See Merscorp, Inc., v. Romaine*, 8 N.Y.3d 90 (2006).

4.        In connection with the specific question before us, the inquirer has related the following facts, which we assume to be true.  The inquirer is an attorney ("Attorney") who represents the current mortgagee ("Client") in a pending residential mortgage foreclosure action.  The inquirer does not represent MERS in the foreclosure action, and does not otherwise represent or provide legal services to MERS.  The mortgage instrument executed by the mortgagor and the initial lender at the closing in October 2007 provided that MERS would be the mortgagee of record "acting solely as a nominee for Lender and Lender's successors and assigns."  The initial lender subsequently sold the mortgage loan, and the inquirer's Client is the current assignee and holder of the note and mortgage, which is duly registered in the MERS System, but not in the real property records of the county clerk.

5.        Many residential foreclosure actions brought in the name of MERS, as nominee and mortgagee of record, have foundered on the question of MERS' standing to sue.  *See, e.g., LaSalle Bank National Association v. Lamy*, 12 Misc.3d 1191(A), 2006 WL 2251721 (N.Y. Sup. Ct. Suffolk Cty. 2006) (citations omitted) ("this court and others have repeatedly held that a nominee of the owner of the note and mortgage, such [as] MERS, may not prosecute a mortgage foreclosure action in its own name as nominee of the original lender because it lacks ownership of the note and mortgage at the time of the prosecution of the action").  To avoid dismissal or delay for lack of standing, some members of the MERS System, including inquirer's Client here, have elected to prepare and record a paper assignment with the county clerk before commencing the foreclosure action.  That way, the plaintiff in the foreclosure action will not be merely the mortgagee of record; rather, the plaintiff will be the real party in interest and the holder of the mortgage note.

6.        To accommodate the expeditious preparation and recording of these paper assignments from MERS as assignor to Client, as assignee, a three-party agreement entitled "Agreement for Signing Authority" was entered into between MERS, Client and Attorney in December 2007.  This agreement appointed Attorney, plus three non-lawyer members of Attorney's staff, as assistant secretaries and vice presidents of MERS, and authorized each of them (i) to execute, on MERS behalf, any assignment of any mortgage lien or any release of any mortgage loan registered to Client in the MERS System, and (ii) to execute all documents necessary to foreclose upon real property secured by a mortgage loan registered to Client in the MERS System.

## OPINION

**A.**      **Are There Conflicts Under Rule 1.7(a)(2)?**

7.          Against this background, we are asked whether Attorney's dual role – officer of MERS (or supervisor of three employee non-lawyer officers of MERS) and counsel for Client – constitutes a conflict of interest. This inquiry is governed by Rule 1.7(a)(2) of the New York Rules of Professional Conduct (the "Rules"), which addresses conflicts between a client and the personal interests of the client's lawyer. Specifically, Rule 1.7(a)(2) provides:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that ... (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests.

8.          Because Attorney here was selected, engaged and paid by Client, not by MERS, to prosecute the foreclosure proceeding, there is no basis for a "reasonable lawyer" to conclude, under Rule 1.7(a)(2), that there exists a "significant risk that [Attorney's] professional judgment on behalf of [Client] will be adversely affected by lawyer's own financial, business, property or other personal interests" arising from Attorney's limited signing authority on behalf of MERS.

**B.**      **Are There Conflicts Under Rule 1.7(a)(1)?**

9.          We will also address Rule 1.7(a)(1), which addresses conflicts between or among multiple clients. Rule 1.7(a)(1) provides as follows:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if a reasonable lawyer would conclude that ... (1) the representation will involve the lawyer in representing differing interests.

10.         Rule 1.7(a)(1) is not at issue because MERS is not a client of Attorney. Rather, Attorney represents only one client, the mortgagee. Nonetheless, for the sake of completeness, we note that there are no "differing interests" between MERS and Client that would create a conflict of interest under Rule 1.7(a)(1). Rule 1.0(f) defines "differing interests" to include "every interest that will adversely affect either the judgment or loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse or other interest." There are no differing interests between MERS and Client because the mortgage assignment from MERS to Client did not convey any tangible interest in real property. Rather, MERS was merely a nominee mortgagee of record without any economic interest in the outcome of the foreclosure proceeding. Similarly, MERS's express grant to Attorney of the requisite authority to prosecute the foreclosure action is not adverse to MERS.

3

11.      Moreover, even if a conflict of interest did arise under subparagraphs (a)(1) or (a)(2) of Rule 1.7, the conflict was cured pursuant to Rule 1.7(b). It was cured when Attorney obtained informed consent from the affected Client, confirmed in writing, as reflected in the Agreement for Signing Authority described above.

12.      It is conceivable, of course, that in preparing and prosecuting the foreclosure action, Attorney will discover some error or omission on the part of MERS that has created a viable defense to the foreclosure action or that could result in substantial delay to the entry of a mortgage foreclosure judgment in Client's favor. For example, it is possible that the electronic records of the MERS system are materially incomplete or inconsistent with Client's putative status as mortgagee. This circumstance, in which Attorney erroneously relied upon the accuracy of the MERS System in exercising the Attorney's signing authority to create and record a paper assignment in anticipation of a mortgage foreclosure action, might rise to the level of conflicting fiduciary obligations between Attorney as assistant secretary and vice president of MERS, on the one hand, and Attorney as foreclosure counsel for Client, on the other hand. Such a situation would require further analysis under Rule 1.7(a)(2) and (b). However, as far as we have been informed, such a conflict does not exist here.

13.      We do not opine on the application of the Real Property Law, or other State or federal statutes, to the execution of the mortgage assignment or any other documents submitted in the foreclosure action. That is beyond our jurisdiction as an ethics committee.

## CONCLUSION

14.      Based on the facts presented, and subject to the qualifications stated, we answer the inquiry in the affirmative. An attorney may represent the beneficial owner of a mortgage note and mortgage, and concurrently serve as an officer of the mortgagee of record, for the purposes of executing a mortgage assignment to the beneficial owner and prosecuting a mortgage foreclosure action in the assignee's name.

(45-10)

4