

Mailing Address
P.O. Box 1291
Buffalo, NY 14240-1291

Overnight Mail
220 Northpointe Parkway
Suite G
Amherst, NY 14228

**STEVEN J. BAUM, P.C.**
ATTORNEYS AT LAW

Phone Number
716-204-2400

Fax Number
716-204-4600
Not for Service

Web Site
WWW.MBAUM.COM

October 27, 2011

Hon. Robert E. Littlefield, Jr.
Chief U.S. Bankruptcy Judge
United States Bankruptcy Court
James T. Foley Courthouse
445 Broadway, Suite 330
Albany, NY 12207

Re:         JOHN C. SZUMOWSKI
Case No.    10-12431-rel

Dear Judge Littlefield:

  This correspondence is In response to Mr. Kim's letter dated October 26, 2011. At the outset, it should be pointed out that while Mr. Kim would like to infer that the delay is solely the fault of the Secured Creditor, Mr. Kim did nothing to prosecute this matter after the initial Motion for Protective Order to stop the forensic testing had been heard. The first time the undersigned was contacted by Mr. Kim to begin discussions regarding the testing was in August, almost two months after the entry of the order, and that conversation centered around obtaining the endorsement stamps used on the note. Thereafter, when discussions commenced about transporting the note, Mr. Kim's position was that the note should be handed over since the forensic testing was ordered by the court. In fact, it was not until the undersigned requested the court's intervention at the last conference that Mr. Kim became willing to agree to any stipulation to protect the Secured Creditor rights.

  While Mr. Kim wants to proceed in an expedited manner, given the sensitive nature of the subject we are dealing with, this is not something that can be rushed into. The Secured Creditor is not unduly delaying the testing, but it working to explore all avenues so that neither party is caused an undue burden and both parties retain their rights. Failure to exercise due diligence and explore all possible consequences could result in the Secured Creditor's lien being impaired. Additionally, it remains unclear as to what Mr. Kim's concern with the stipulation is as he failed to convey such to my assistant. Mr. Kim made no attempt to contact myself and never responded when my managing attorney contacted him to try to see what issues or concerns he had with the proposed stipulation. Rather, his course of conduct was to threaten to request sanctions.

  The stipulation as proposed was drafted in good faith and believed to be the least intrusive to the parties while still protecting both parties' rights. The stipulation took additional time to prepare due to the fact that we were working to ensure that in the end, should the Note be damaged or destroyed, that the Secured Creditor's lien would be adequately protected. Mr. Kim raises the point that the parties initially agreed that the Debtor would execute a new note in the event the present note was destroyed or damaged during the testing. While initially this was proposed, upon review with title counsel it was determined that executing a new note could raise title issues. On October 19, 2011, when I was in Albany for another matter related to this case, I apologized for the delay and advised Mr. Kim that we were consulting with title counsel regarding potential issues. The imperative question being addressed was based on the fact that a mortgage secures the note, and whether a new note would

be properly secured if the lender and execution date differed between the two documents. It was determined that there could be a title issue and that in order to resolve this, the Debtor would not only need to execute a new note but also an estoppel agreement wherein the Debtor would agree that he would not challenge whether the mortgage secured the new note. Clearly, this would have imposed more on the Debtor than originally contemplated. The stipulation was then changed to propose that the Debtor need not execute any documents but rather that the stipulation and a true and accurate copy of the current Note could be filed with the County Clerk's Office. We believed that this proposal is less intrusive on the Debtor and does not require the execution of any new documents, while still protecting the Secured Creditor's rights.

The stipulation further meets the guidelines that were previously discussed with Mr. Kim. Mr. Kim previously proposed that we include language regarding a chain of custody log. However, the Secured Creditor has retained McGuire Woods, LLP ("McGuire Woods") as national counsel who has agreed to maintain possession, custody, and control of the Collateral File for the length of the forensic testing. McGuire Woods maintains offices in Raleigh, North Carolina, the same place where the testing is to occur. I advised Mr. Kim of this in an earlier phone conversation thus negating the need for any chain of custody log. As set forth in the stipulation, a representative of the firm would transport the collateral file to the testing facility, where he or she would stay during the testing as was agreed by the parties could be done. At the end of the testing for the day, rather than the consultant being responsible for securing the Collateral File, the representative of the firm would then transport the Collateral File back to McGuire Woods. The stipulation also permits the forensic consultant to have continued access to the Collateral File for whatever time period is needed to complete the testing.

Again, had Mr. Kim contacted my office to reasonably discuss his concerns this conference could have been avoided altogether, but the fact that Mr. Kim repeatedly engages in a course of conduct threatening sanctions led to the request for today's conference.

If you have any questions, please feel free to call.

    Very truly yours,

    STEVEN J. BAUM, P.C.

    *Natalie A. Grigg*

    By:    Natalie A. Grigg, Esq.

cc:    Ronald J. Kim, Esq.